IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

JERRY COOLEY,           )
                        )
     Plaintiff,        )
                        )
v.                 )     Civil Action No.: 03-PT-2502-E
                        )
CITY OF ANNISTON,     )
A Municipal Corporation, and   )
CHUCK BATTLES,       )
                        )
     Defendants.     )

## MEMORANDUM OPINION

This cause comes on to be heard upon defendant Chuck Battles's ("Battles") "Motion to Dismiss and/or For Judgment on the Pleadings on Counts II, III, and IV of Plaintiff's Complaint,"[1] filed on November 28, 2003, Battles's Motion for Summary Judgment, filed on January 2, 2004, and defendant City of Anniston's ("the City") Motion for Summary Judgment, filed on January 7, 2004.

## FACTS AND PROCEDURAL HISTORY[2]

While plaintiff Jerry Joe Cooley, Jr. ("Cooley") and defendants provide different accounts of the events of August 29, 2002, *see infra,* the following facts appear undisputed. On the afternoon of August 29, 2002, Cooley, a resident of Calhoun County, Alabama, was arrested by Battles and other law enforcement officers. Battles is employed by the Office of the District Attorney Seventh Judicial Circuit as a police officer and investigator assigned to the Calhoun Cleburne County Drug

---

[1] Battles moves to dismiss under Rules 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure.

[2] For purposes of Battles's motion to dismiss, the facts are as alleged in the complaint. For purposes of defendants' motions for summary judgment, the facts are viewed in the light most favorable to plaintiff. The court notes where particular facts appear disputed. Facts are treated as undisputed if unaddressed (and thus apparently unopposed) by plaintiff.

& Violent Crime Task Force ("Drug Task Force").[3]

On that afternoon, Battles was riding in an unmarked vehicle driven by Officer Phillip Smith ("Smith"), an Anniston police officer assigned to the Drug Task Force.   Smith and Battles began to follow Cooley, who was driving a blue, four-door Chevrolet bearing 2002 Georgia license tag number "592 YJJ."  Cooley and the officers did not know one another.  Cooley was driving without a seatbelt.  While waiting for vehicle registration information, Smith and Battles followed Cooley for several blocks.  Then the parties' accounts diverge.

According to Cooley, he was traveling northbound on Noble Street when the unmarked car driven by Smith attempted to stop him.  Cooley alleges that Battles and Smith did not initially identify themselves as police officers, were wearing plain clothes, and followed him several blocks. Because Cooley believed Battles and Smith to be drug dealers, not police officers, Cooley did not stop until a marked police car driven by Officer Shed Dobbin ("Dobbin") of the Anniston Police Department activated its emergency lights at the intersection of Blue Mountain Road and North Noble Street.  According to Cooley, he pulled into the first available parking lot to surrender to the officers, i.e., the incline on Noble Street opposite the Edgemont Cemetery.[4]  Cooley denies driving a block and a half after the emergency lights were activated prior to the stop of his vehicle.[5]

On the contrary, defendants allege, at approximately 21st Street and McKleroy Avenue,

---

[3] Battles has over eight years of law enforcement experience.  *See* Battles Dec. ¶ 3.

[4] Cooley's response stated: "[T]he street at the intersection of Blue Mountain and North Noble is a two lane street with two way traffic which required the plaintiff to exit at the incline on Noble Street opposite to a cemetery on the right side of the street."

[5] From Cooley's complaint and affidavit, the court cannot determine whether Cooley disputes that Smith and Battles turned on their lights and siren.  In this regard, Cooley's affidavit only stated: "Upon the stop, I was physically pulled from the car and placed in a choke-hold. Task Force Officers inquired why I did not stop when the blue lights were shown in the unmarked police car.  I replied that I didn't know who they were and I thought they were going to car jack me."  *See* Cooley Aff. ¶¶ 8-10.

Smith activated his vehicle's blue lights to initiate a traffic stop,[6] but Cooley failed to do so. According to defendants, Cooley continued east on 21st Street. After about two blocks (just prior to Noble Street), defendants contend, Smith activated his vehicle's siren. Again, defendants allege, Cooley failed to stop and instead turned north on Noble Street and continued north. By defendants' accounts, Cooley's failure to stop led the agents to conclude that Cooley was interfering with their ability to perform their duties as law enforcement officers. According to Battles, while Smith pulled along Cooley's vehicle, Battles motioned to Cooley to pull over. Defendants allege that Cooley acknowledged the agents but just smirked and continued driving. At the intersection of Blue Mountain Road (about 11 blocks north of where the officer turned onto Noble from 21st Street), defendants aver, Officer Dobbin got behind Cooley's vehicle and activated his emergency lights, after which Cooley pulled over approximately a block later.[7] Smith and Battles approached Cooley's vehicle and opened the door.

The officers' actions following the stop are also disputed. After stopping him, Cooley alleges, Battles and Smith asked him why he did not stop when they turned on their blue lights. By Cooley's account, he replied that he didn't know who they were and thought they were going to car jack him. According to Cooley, Smith and Battles pulled him from the car and placed him in a choke hold, stating "I'll show you how you will be 'jacked.'" Cooley denies resisting arrest in any way. According to Cooley, he was held in the choke hold long enough to suffer permanent injuries to his eye and abrasions on his arms and legs.

Defendants recount different facts. According to Battles, Battles pulled his shirt up to reveal

---

[6] Agent Smith has adopted Battles's version of the events of August 29, 2002.

[7] No affidavit or deposition testimony for Dobbin has been provided to the court by either party.

his badge clipped on his belt and identified himself as belonging to the Drug Task Force.  Battles asked Cooley why did not stop, to which Cooley allegedly replied "Y'all ain't the police." According to defendants, Smith told Cooley he was under arrest for interfering with a police officer, and Battles ordered Cooley to get out of the car (which Cooley refused to do).  At that point, defendants aver, Battles and Smith removed Cooley from the car and attempted to wrestle Cooley to the ground. At that time, Battles alleges, they were unsure if Cooley was carrying a concealed knife or gun.  According to defendants, Smith and Battle ordered Cooley to place his hands behind his back and stop resisting, but Cooley actively resisted arrest and refused to offer his hands for cuffing.[8]  Defendants assert  Cooley attempted to break loose from the officers' grasps by trying to pull his arms away from their hands, "apparently intending to run."  When the agents got Cooley to the ground for a moment, defendants allege, Cooley at one point used both of his hands to push up off the ground.  During this time, defendants aver, Smith and Battles continued to yell commands for Cooley to stop resisting.  Only at that point, defendants allege, did Battles apply a lateral vascular neck restraint ("LVNR") to Cooley.[9]

After applying the choke hold (plaintiff's term)/LVNR (defendants' term), Smith and Battles, assisted by Officers Garrison and McKleroy of the Anniston Police Department,[10] handcuffed

---

[8] Again, Cooley denies resisting arrest in any way.

[9] According to Battles, a LVNR is used to effect an arrest using the minimum force necessary to subdue a combative arrestee without striking any blows.  Battles has allegedly been trained on proper LVNR application. Battles alleges the LVNR was the minimum force necessary to subdue Cooley so the agents could complete his arrest.

[10] From the record, the court notes, it is unclear whether officers Garrison and McKleroy traveled with or separately from Officer Dobbin.  Garrison testified that he did not make the stop of Cooley and only saw the end of the struggle.  Presumably, Officer Dobbin would have witnessed the events in dispute, as he allegedly was the Anniston police officer whose blue lights and marked police car prompted Cooley to stop.  However, no evidence from Officer Dobbin appears to be in the record.

4

Cooley. This arrest, defendants assert, was effectuated "without striking any blows to Mr. Cooley."

Defendants contend: "Cooley had minor abrasions and scratches after the arrest due to his thrashing

around on the asphalt of the parking lot while resisting arrest."

The City of Anniston's written Standard Operating Procedures for the Anniston Police

Department on the use of force provide:[11]

> **Unnecessary Force:** Member shall not use unnecessary force or violence
> or violence in making an arrest or in dealing with a prisoner or any person.
> Members shall not strike or use any other form of physical force on a
> prisoner or other person except when necessary to prevent an escape, in
> self-defense, to overcome actual physical resistance, or to prevent
> violence to another person. However, he must be firm, resolute and energetic,
> exercising the necessary means to properly perform his duty.
>
> **Degree of Force To Be Used In Making An Arrest:** In making an arrest,
> an officer must be careful not to submit his prisoner to any greater
> severity or indignity than is necessary to effect the arrest and bring the
> prisoner safely to the police building for booking.
>
> The statutes require the officer to do his duty at all hazards, but in the
> performance of his duty they require him to be as considerate as the
> circumstances will permit. The officer must remember that he is responsible
> for his prisoner and is required to do what is necessary to secure him. The
> officer must use his own good discretion, and if he does his duty in a
> consistent, careful and prudent manner, he will be justified. While the
> officer is required to be as gentle and considerate in making an arrest as
> circumstances will permit, he must also remember that he is a representative
> of the law, to whose lawful demands all must submit. The officer is charged
> with the duty and armed with the power to compel such submission.
>
> **Report To Be Made On Any Force Used:** Whenever it is necessary to use
> any unusual physical force or other means, said member shall report same
> as soon as possible to his commanding officer, and a written report to the
> chief of police, through channels, relating all circumstances, shall be
> included with the arrest report on the case. Should he have to use physical
> force, or other means to overcome actual physical resistance, he will, on
> approval of his commanding officer, also charge the subject with inter-

---

[11] *See* City's Ex. 1B.

fering with an officer and/or assault, as the case may be.

The parties agree that Cooley was taken to the Drug Task Force office for booking and placed in the Anniston City Jail. During booking, Smith alleged, Smith asked whether Cooley had any injuries, to which Cooley replied that his knees were scraped. According to Smith, Smith asked whether Cooley needed medical attention, to which Cooley replied "no." Cooley was booked on three misdemeanor charges: (1) interfering with a police officer in violation of § 24.23 of the City of Anniston Municipal Code;[12] (2) resisting arrest in violation of § 13A-10-41 of the Alabama Code;[13] and (3) driving without a seat belt in violation of § 32-5B-4 of the Alabama Code.[14] *See* Alabama Uniform Arrest Report.[15]

After Cooley's August 29, 2002 arrest, Smith completed an "Incident/Offense Report" for the Drug Task Force.[16] The day after his arrest, defendants allege, Cooley went back to the Drug Task Force office and complained of injuries from the arrest, including abrasions/scratches and injury to his left eye. According to Battles, he neither observed injury to Cooley's left eye at the

---

[12] The City of Anniston Municipal Code provides: "Sec. 24.23. Assaulting or interfering with an officer. It shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse, interrupt or interfere with any officer of the city or any policeman in the execution of his duty."

[13] Alabama Code § 13A-10-41 provides: "(a) A person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting a lawful arrest of himself or of another person. (b) Resisting arrest is a Class B misdemeanor."

[14] Alabama Code § 32-5B-4 provides: "Each front seat occupant of a passenger car manufactured with safety belts in compliance with Federal Motor Vehicle Safety Standard No. 208 shall have a safety belt properly fastened about his body at all times when the vehicle is in motion."   This section further provides: "Any person violating the provisions of this chapter may be fined up to $25.00."

[15] The Battles Affidavit provides: "[I]t is a regular practice for one of the Drug Task Force agents to complete an Alabama Uniform Arrest Report after an arrest is made. Copies of these reports are then kept by the Drug Task Force in the course of its regularly conducted activities."

[16] The Battles Affidavit provides: "Drug Task Force agents regularly make arrests, and it is also a regular practice for one of the arresting Drug Task Force agents to complete an 'Incident/Offense Report' after an arrest is made. Copies of these reports are then kept by the Drug Task Force in the course of its regularly conducted activities."

time of the arrest nor heard Cooley complain of such injury.

On August 30, 2002, Agent Smith filed two complaints against Cooley in the Municipal Court of Anniston. In case number MC-02-2182, Cooley was charged with interfering with a police officer. In case number MC-02-2183, Cooley was charged with resisting arrest. While Cooley has contended in his opposition to summary judgment that he was also charged at this time with failure to wear a seat belt, the court does not find a seat belt charge in either MC-02-2182 or MC-02-2183.

The case was called for trial on November 6, 2002, continued on the city prosecutor's motion, and reset for November 13, 2002. On November 13, 2002, the case was again continued on the city prosecutor's motion and reset for December 11, 2002. On December 11, 2002, the charges in both cases were *nolle prossed*. The Case Action Summary bench notes provided: "Nol Prossed - officers not present 3rd time <3 times>."[17]

On March 31, 2003, Cooley filed a claim with the City of Anniston alleging civil rights violations and malicious prosecution. On April 23, 2003, Agent Smith filed two complaints against Cooley in the District Court of Calhoun County. In case number DC-03-2280, Cooley was again charged with resisting arrest, while in case number DC-03-2281, Cooley was charged with failure to wear a seat belt. On May 9, 2003, Cooley was arrested again.

After various continuances,[18] the case was scheduled for September 9, 2003. On September

---

[17] Defendants observe that Battles is not a prosecutor and did not decide to *nolle pross* the charges. Battles was not at the hearing where the charges were *nolle prossed*.

[18] It appears the case was set for trial on June 24, 2003 but continued on a joint motion of the parties until July 22, 2003, then continued on plaintiff's motion until August 12, 2003, then continued on the state's motion until September 9, 2003.

7

9, the State *nolle prossed* the district court case.[19]  On September 10, 2003, the charges in Municipal Court were reinstated, but the court continued hearing on the charges until December 17, 2003, "for outcome of injunction in federal case."

Also on September 10, 2003, Cooley filed a complaint against the City of Anniston, Battles, and "officers x, y, z, (whose names will be added when ascertained)."[20] Count One of the complaint alleged:[21] (1) Battles was employed by the Drug Task Force of the City of Anniston Police Department, (2) Battles "unlawfully deprived plaintiff of Plaintiff's legal rights guaranteed to him by the Constitution and laws of the United States when Cooley was arrested, assaulted, choked, and submitted to excess force by" Battles and/or officers X, Y, Z employed by Anniston; (3) the officers lacked probable cause for Cooley's arrest "in violation of the 5[th] (*sic*), 6[th] (*sic*), and 14[th] (*sic*) Amendments"; (4) the officers acted under color of state law and pursuant to either an official policy of the City of Anniston or a custom or practice endorsed or approved by Anniston; and (5) defendants' actions violated 42 U.S.C. § 1983.

Count Two alleged that Battles and " X, Y, Z" acted maliciously and without probable cause in arresting him.[22]  Plaintiff alleged: "After several court appearances I was humiliated and maliciously prosecuted, defamed and damaged."  Plaintiff alleges that his injuries were caused by the negligence or wantonness of Battles and "X, Y, Z" and were due to the City of Anniston's

---

[19] Again, Battles argues, the prosecutor (not Battles) made that decision.  Specifically, the document indicating the case was *nolle prossed* on September 9, 2003, noted that "proper jurisdiction" was in the "City of Anniston Court."

[20] No additional parties have been named.

[21]  Cooley seeks $ 100,000 or more against the City of Anniston or its employees for Count One.

[22] Cooley seeks $ 100,000 or greater "for each state tort claim cited in Count Two" and demands trial by jury.

negligent hiring, training, or retraining of these officers.

Count Three alleged abridgement of Cooley's "rights to life, liberty, and the pursuit of happiness guaranteed by the First Amendment(*sic*)." Additionally, Cooley alleged abridgement of "my rights to a fair trial and trial by jury as required under the fifth, sixth, eighth and fourteenth amendment[s] ... in violation of the fourth amendment . . . ." and abridgement of his right to be free from excessive force and cruel and unusual punishment.[23] Finally, Count Four requested an injunction against the City of Anniston "from further prosecution concerning this set of facts" and alleged that attempts to reinstate charges against Cooley violate both his civil rights under § 1983 and his right to be free from double jeopardy.

Pursuant to this court's scheduling order of October 3, 2003, Battles served his initial Rule 26(a)(1) disclosures on plaintiff by mail on October 23, 2004. However, defendants allege, Cooley did not serve his initial Rule 26 disclosures until November 26, 2003 (over a month after the court-mandated deadline). Additionally, Battles observes, plaintiff did not amend his complaint. On November 28, 2003, Battles filed his motion to dismiss and/or for judgment on the pleadings. While Battles served his pretrial disclosures under Rule 26(a)(3) on December 2, 2003, defendants note, plaintiff has not served any pretrial disclosures under that rule or disclosed expert testimony.[24]

At the December 17, 2003 Anniston municipal court hearing, Cooley's attorney requested a continuance because of this federal case, and the continuance was granted until June 2004.

## RULE 12(b)(1) STANDARD

---

[23]   In Count Three, Cooley claims damages and injunctive relief pursuant to §§ 1983 and 1985 and seeks $ 500,000 or more in damages.

[24] According to Battles, because plaintiff disclosed no expert testimony, Battles elected not to retain an expert.

9

A defendant may file a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. A defendant may attack subject matter jurisdiction in two ways: facially and factually. *See Scarfo v. Ginsburg*, 175 F.3d 957, 960 (11th Cir. 1999). Under a facial attack, the court merely looks to see if the "plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 960 (citations omitted). In contrast, factual attacks "challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.* (citations omitted). The court is free to weigh the evidence, and "'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.* at 960-61 (citations omitted). The burden is placed on the plaintiff to prove that jurisdiction exists in the face of a factual challenge to subject matter jurisdiction. *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

## RULE 12(c) STANDARD

Rule 12(c) provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Judgment on the pleadings is appropriate where no issue of material fact remains unresolved, and the moving party is entitled to judgment as a matter of law. *See Mergens v. Dreyfoos*, 166 F.3d

10

1114, 1117 (11th Cir. 1999)(citing *Ortega v. Christian*, 85 F.3d 1521, 1524-25 (11th Cir. 1996)). When reviewing judgment on the pleadings, the facts alleged in the complaint are taken as true and viewed in the light most favorable to the nonmoving party. *Id.*

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light

11

most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999).  Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion.  *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## DEFENDANT BATTLES'S MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS

### I.   Defendant's Motion

#### A.   Introduction

Cooley's federal court complaint, Battles contends, contains the following claims: Count One (excessive force in arresting Cooley); Count Two (malicious prosecution); Count Three (deprivation of fair trial and trial by jury and excessive force)[25]; and Count Four (an injunction barring further prosecution of Cooley).[26]  The documents upon which Battles relies for this motion, i.e., certified copies of the records in *Anniston v. Cooley* and in *State v. Cooley,* Battles argues, are self-authenticating under Rule 901(4) of the Federal Rules of Evidence and subject to judicial notice under Rule 201 of the Federal Rules of Evidence.

#### B.   Standards of Review[27]

*Younger* abstention as a grounds for dismissal, Battles argues, may be raised under Rule 12(b)(1).  *See Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998)[28]; *see also Luckey v. Miller,*

---

[25] According to Battles, the fair trial claim is duplicative of Cooley's malicious prosecution claim in Count Two, and his excessive force claim is duplicative of his claim in Count One.  The court agrees.

[26] However, the court observes that the complaint suggests additional claims, such as negligent hiring, training, or retention mentioned in Count Two.

[27] The court does not include all of defendant's arguments in this regard, since this memorandum opinion discusses the standards of review *supra*.

[28] The court notes that the district court in *Majors* evaluated the motion under Rule 12(b)(6), not 12(b)(1).

976 F.2d 673, 676 (11th Cir. 1992)("Plaintiff's complaint has been upheld in the face of the challenges based on Fed. R. Civ. P. 12(b)(6), and the Eleventh Amendment.  As pointed out above, this complaint now faces a challenge based on the abstention doctrine of *Younger v. Harris* . . . .").

Also, Battles contends, the court may take judicial notice of public records without converting a Rule 12(c) motion into a motion for summary judgment.  *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802 (8th Cir. 2002); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279-80 (11th Cir. 1999)(allowing court to consider matters of public record on motion to dismiss).[29]

C.    **Argument**

1.    **Younger Abstention Requires Dismissal of Count IV.**

According to Battles, the federal court must abstain from interfering with ongoing state court criminal proceedings and thus dismiss Count IV.  *See Younger v. Harris*, 401 U.S. 37 (1971). Criminal proceedings against Cooley preceded plaintiff's filing of the federal court action.  Even if the state criminal proceedings are deemed to have been initiated on the date when the charges were reinstated in municipal court (September 10, 2003), Battles argues, abstention is required.  As of September 10, 2003, Battles contends, no substantive proceedings on the merits had occurred. Battles relies on *Hicks v. Miranda*, 422 U.S. 332, 349 (1975): "[W]here state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force."  The court agrees that this count should be dismissed.

2.    **Counts II and III Should Be Dismissed as Premature and Duplicative**.

According to Battles, the malicious prosecution claim in Count II is due to be dismissed

---

[29] *Bryant*, the court observes, involved a 12(b)(6) motion to dismiss.

based on the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994):

> [I]n order to recover damages for unconstitutional conviction or imprisonment,
> or for other harm caused by actions whose unlawfulness would render a
> conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal authorized to make such
> determination, or call into question by a federal court's issuance of a writ of
> habeas corpus. A claim for damages bearing that relationship to a conviction
> or sentence that has *not* been so invalidated is not cognizable under § 1983.
> Thus, when a state prisoner seeks damages in a § 1983 suit, the district
> court must consider whether a judgment in favor of the plaintiff would
> necessarily imply the invalidity of his conviction or sentence; if it would,
> the complaint must be dismissed unless the plaintiff can demonstrate that the
> conviction or sentence has already been invalidated.

Here, Battles argues, the malicious prosecution claim is premised on the invalidity of plaintiff's arrest and prosecution, but to date there has been no termination of the state court prosecution in a way favorable to Cooley. The trial date has been postponed until June 2004. Accordingly, Battles asserts, Cooley's malicious prosecution claim is premature.

As for Count III's excessive force claim, Battles argues, it is duplicative of Count I and thus should be dismissed. *See Harrison v. Digital Health Plan*, 183 F.3d 1235, 1237 at n.1 (11th Cir. 1999)(finding no error in dismissal of a claim as duplicative). The court agrees with both premises. Count II will be dismissed, without prejudice.

## II.    Plaintiff's Response

This court, plaintiff contends, has a duty to intervene where his civil rights have been abridged. Cooley relies on *Dombrowski v. Pfister*, 380 U.S. 479 (1965) and *Doran v. Salem Inn*, 422 U.S. 922 (1975).[30] In *Dombrowski*, Cooley argues, the Supreme Court allowed a criminal

---

[30] Cooley argues "the instant case presents the set of facts conceived by the Court in [Doran] when it opined that a federal court under circumstances which are exceptional in that a threat of irreparable injury both great and immediate exist (*sic*). It may intervene either through injunctive or declaratory relief."

defendant injunctive relief for sufficiently alleging irreparable injury  justifying equitable relief against a threatened state criminal prosecution.  The *Dombrowski* court, Cooley asserts, determined that measures taken by the police and the prosecutor together with repeated threats of prosecution for plaintiffs' political beliefs were chilling membership in a political organization in violation of the First Amendment and thereby justified injunctive relief.  In the instant case, Cooley argues:

> Plaintiff . . . was unlawfully arrested and attacked by the Defendants.  He was also unsuccessfully prosecuted in the Municipal Court of the City of Anniston and the District Court of Calhoun County, Alabama.  Plaintiff after asserting his civil rights by claim filed in the City of Anniston . . . was re-arrested on the same charge of resisting arrest in Calhoun County District Court.  After an unsuccessful State prosecution, the charges in Anniston Municipal Court were reinstated.  Plaintiff takes the position that the prosecutions of the plaintiff were not pursued in good faith as presupposed by the court in <u>Younger</u> . . . [and are] subterfuge for improper police conduct and the malicious prosecution of the Plaintiff.

Plaintiff further asserts that the fact he has been harassed allows this court to restrain the state action.  *See also Colorado River Water Conservation District v. U.S.*, 424 U.S. 800 (1976).  Additionally, plaintiff asserts, he has established a case of malicious prosecution.  Relying on *Wheeler v. Cosden Oil and Chemical Company*, 734 F.2d 254 (5th Cir. 1984)[31] and *Shaw v. Garrison*, 467 F.2d 113 (5th Cir. 1972), plaintiff contends, the defendant bears the burden of proving that defendant's actions were not improperly motivated.  In the instant case, plaintiff contends: "The

---

In *Doran*, this court observes, the Supreme Court held:

> [O]n the facts of this case the issuance of a preliminary injunction is not subject to the restrictions of Younger. The principle underlying Younger and Samuels is that state courts are fully competent to adjudicate constitutional claims, and therefore a federal court should, in all but the most exceptional circumstances, refuse to interfere with an ongoing state criminal proceeding. In the absence of such a proceeding, however, as we recognized in Steffel, a plaintiff may challenge the constitutionality of the state statute in federal court, assuming he can satisfy the requirements for federal jurisdiction.

[31] *Wheeler*, the court notes, has been abrogated in part by *Castellano v. Fragozo*, 352 F.3d 939, 945-46 (5th Cir. 2003).

motivation of the Defendants in continuing the prosecution of Plaintiff is obviously to eliminate all civil liability for the improper acts of the Task Force Officers by the bad faith prosecutions which have been obvious efforts at forum shopping to obfuscate the real issues in the case."

According to Cooley, by *nolle prossing* the municipal court case in the first instance for defendants' failure to appear on three occasions, the Anniston municipal court essentially dismissed the case on the merits. The city attorney, Cooley contends, strongly opposed the order at that time. Moreover, Cooley asserts, the judge could have simply reset the case or *nolle prossed* without referring to the number of times the Drug Task Force officers had failed to appear. Additionally, Cooley avers, the officers have not ever explained the basis for their non-appearance. According to Cooley, a dismissal may be proper if a defendant suffers demonstrable prejudice or substantial threat of prejudice, and the trial court is unable to identify and neutralize the taint by other means, regardless of whether the particular grounds of dismissal have been recognized previously by state courts. *See State v. Terrazas*, 962 S.W.2d 38 (Tex. Crim. App. 1998)(involving dismissal of indictment charging plaintiff with tampering with governmental records)(citation omitted).

## III.   Defendant's Reply

### A.   Standard of Review

Again, Battles notes, some courts have addressed *Younger* abstention as a jurisdictional issue under Rule 12(b)(1), while others have addressed it under Rule 12(b)(6). Further research, Battles asserts, uncovered *Falanga v. State Bar of Georgia*, 150 F.3d 1333, 1335 n. 2 (11th Cir. 1998), in which the court stated in a different context: "It appears that 'Younger abstention is not jurisdictional.'" This dicta, Battles argues, may suggest that Rule 12(c) is a more appropriate procedure in this case. Regardless, Battles contends, under either mechanism the records of the state

court proceedings may be examined by this court, and the court may consider the merits of the defendants' *Younger*-based arguments.

### B.   Argument

For purposes of *Younger* abstention, Battles argues, the bad faith exception is narrowly drawn: "A prosecution is undertaken in bad faith when 'a prosecution has been brought without a reasonable expectation of obtaining a valid conviction.'" *See Redner v. Citrus County*, 919  F.2d 646, 650 (11th Cir. 1990)(citation omitted).  In the instant case, Battles contends, the facts in both the municipal court complaints and Agent Smith's narratives attached to those complaints are more than sufficient to establish that the prosecution has such a reasonable expectation, and probable cause existed to charge plaintiff.  Thus, Battles asserts, *Shaw v. Garrison* and *Wheeler v. Cosden Oil* are inapposite.

According to Battles, this court should consider the following: (1) There is no bad faith; (2) Battles is not a prosecutor and thus did not decide to continue plaintiff's prosecution; (3) The "real issues" are Cooley's refusal to obey a lawful order to stop his vehicle and resisting of arrest, which will be heard in the Anniston municipal court if this federal court grants defendants' motions; and (4) The municipal judge did not dismiss Cooley's charges on the merits, since the charges were reinstated as shown in the record.  Since the charges against Cooley are still pending in municipal court, Battles concludes, abstention is warranted.

### DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### I.   Defendants' Motions

### A.   Battles's Motion

#### 1.   Plaintiff has made no expert or pretrial disclosures as required by Rule 26(a)(2) and (a)(3), and thus may not use any testimony from undisclosed

**witnesses or any undisclosed exhibits in opposing Battles's motion for summary judgment**.

Battles accuses plaintiff of not making expert or pretrial disclosures as required by this court's October 3, 2003 scheduling order. Such disclosures were allegedly due on December 2, 2003.[32] Additionally, Battles argues, while defendant has attempted to secure convenient dates for plaintiff's deposition, plaintiff's counsel has refused to allow his client to be deposed. On December 16, 2003, Battles filed a "Motion to Compel or, in the Alternative, to Dismiss" in an attempt to secure plaintiff's deposition. On January 2, 2004, plaintiff's response invoked the Fifth Amendment. The magistrate judge has not ruled on that motion. Battles now argues: "Because Plaintiff has refused to sit for deposition, he should not be allowed now to submit his own testimony in opposition to summary judgment."

## 2.    Battles is entitled to qualified immunity on the excessive force claim.

Undisputably, Battles contends, arresting plaintiff was a discretionary function of the law enforcement officers involved. *See Wood v. Kesler*, 323 F.3d 872, 883-84 (11th Cir. 2003)("Under Alabama law, Kesler's issuance of the reckless driving citation and warrant of Wood were discretionary acts for immunity purposes."); *Scarborough v. Myles*, 245 F.3d 1299, 1303 n. 9 (11th Cir. 2001). Regarding qualified immunity, the Eleventh Circuit has held:

> "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S.

---

[32] Battles relies upon Rule 37(c)(1), which provides: "A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." The 1993 addition of Rule 37(c)(1) "gave teeth to a significantly broadened duty to supplement Rule 26 disclosures by making mandatory preclusion 'the required sanction in the ordinary case.'" *See Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 19 (1st Cir. 2001)(citation omitted).

> 800, 818 (1982).  This defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "[Q]ualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope v. Pelzer*, 536 U.S. 730 , 739 (2002). . . .

*See Carr v. Tatangelo*, 338 F.3d 1259, 1266 (footnote and parallel citations omitted)(11th Cir. 2003).[33]  In *Hope v. Pelzer*, Battles asserts, the Supreme Court found that the "clearly established" prong of the qualified immunity analysis asks "whether the state of the law" in 2002 gave Battles "fair warning" that his alleged actions in the course of arresting Cooley were unconstitutional.  *See Hope* at 741.

According to Battles, he did not use excessive force in arresting Cooley and did not violate Cooley's constitutional rights.  Considering plaintiff's repeated refusal to stop his car even after Agent Smith turned on the blue emergency lights, sounded his emergency siren, and pulled alongside (with Battles motioning and yelling for Cooley to stop), Battles argues, his actions were "objectively reasonable" under *Graham v. Carter*.  To make matters worse, Battles contends, Cooley actively resisted arrest once his vehicle was stopped, and the officers told him he was under arrest.[34]

---

[33] Additionally, Battles discusses qualified immunity from *Hendon v. City of Piedmont*, 163 F.Supp. 2d 1316, 1322 (N.D. Ala. 2001):

> The Supreme Court has . . . determined that the assessment of whether a public official is entitled to qualified immunity is a two-step inquiry.  First, the trial court must determine whether a constitutional right has been violated on the facts alleged.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  The court must assess the facts in a light most favorable to the party asserting the injury.  *Id.* at [201].  Second, if a violation has been established, the court must determine whether the right was "clearly established."  *Id.*  This inquiry is to be made in light of the "specific context of the case" and not as a "broad general proposition."  *Id.*  The Supreme Court requires "'that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 202 . . . . The dispositive inquiry in determining whether the right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.*

[34] However, the court observes, Cooley disputes these facts and alleges no resistance.

Battles asserts: "[We] had no way of knowing if Cooley was carrying a gun or a knife, and had only seconds to decide how to protect [ourselves] and make the arrest safely."

According to defendant, *Smith v. City of Chicago*, 242 F.3d 737 (7th Cir. 2001)(affirming the district court's grant of summary judgment to defendant law enforcement officers in a case involving a traffic stop by an unmarked police vehicle and an excessive force claim) is analogous.  There, the court noted:

> Smith asserts that he did not commit a traffic violation, he did not know that the men following him were police officers, and he did not hear the siren.  However, **these factual disputes are of no matter because under this standard we consider what happened from an officer's point of view and assess his reasonableness objectively.  The officers' actions in this case were objectively reasonable.**  From the officers' vantage point, Smith committed a traffic violation, whereupon they followed him and played their siren (confirmed by the tape) to signal him to pull over, which Smith did not do for twelve blocks.  When Smith was finally stopped by marked police cars, the officers pulled Smith out of the car, pinned his arms behind his back, slammed him against the hood of his car, and handcuffed him.  **A reasonable officer would have thought that Smith was trying to flee, thereby justifying the use of a higher degree of force to protect the community and the officers than that needed for someone who had committed only a minor traffic violation.  However, the officers' use of force here was not high, let alone excessive.  The factual disputes raised by Smith are not material to his substantive excessive force claim as they rest upon his view of the incident.**  Not all factual disputes warrant the denial of summary judgment; only disputes as to facts material to the substantive claim require resolution by trial.  Since any factual disputes are not material to the substantive claim, we affirm the district court's grant of summary judgment on this claim.

*Id.* at 743-44 (citation omitted)(emphasis added).  Similarly, Battles contends, a reasonable officer following Cooley on a 14-block chase[35] through Anniston would have thought he was trying to flee,

---

[35] Battles's characterization as a "chase," the court notes, implies a high level of speed which does not appear to be alleged in the record.

thus justifying a higher degree of force than that needed for an ordinary minor traffic violation.[36] According to Battles, Cooley compounded his behavior by then resisting arrest and again behaving as if he intended to flee on foot.[37]

The LVNR technique, Battles contends, was used on Cooley to avoid striking blows.  That technique was described in *State v. Harris* as follows: "a self-defense technique used by police officers to gain compliance from suspects.  To execute the restraint, an officer places his arm around the suspect's neck from behind the suspect and applies pressure to the sides of the suspect's neck. In this way, the officer keeps the V or his elbow at the front of the suspect's throat, protecting the suspect's larynx and Adam's apple from injury." *See* 505 N.W.2d 724, 729 (Neb. 1993)(affirming reasonableness of using LVNR to prevent suspect from swallowing drugs.)  Another state appellate court, Battles argues, found that a "LVNR is not a choke hold." *See Peterson v. State*, 2001 WL 789312 at * 1 n. 1 (Tex. App. July 12, 2001).

Additionally, Battles contends, Cooley's abrasions and scratches were minor injuries.  As for his alleged eye injury, Battles argues, Cooley has presented no evidence that it was major or even caused by his arrest; in fact, Battles asserts, Cooley did not complain about his eye until a day after his arrest.  According to Battles, "[h]aving failed to disclose any expert testimony to support his allegation that his arrest caused his alleged eye injury or that his alleged eye injury was more than

---

[36] Incidentally, Battles argues, Cooley's failure to stop a vehicle when ordered to do so violated § 32-5A-193(a) of the Alabama Code, which provides: "Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle, when given a visible or audible signal to bring the vehicle to a stop, shall be guilty of a misdemeanor.  The signal given by the police officer may be by hand, voice, emergency light or siren."  Furthermore, fleeing or attempting to elude a police officer is codified under "Serious Traffic Offenses" in the Alabama Code. *See* Ala. Code §§ 32-5A-190 to 32-5A-195 (1999 & Supp. 2003).

[37] According to Battles, the force used on Cooley, i.e., applying LVNR, was less force than that used by defendant in the *City of Chicago* case, where plaintiff was slammed against the hood of a car.

minor, Plaintiff cannot now attempt to make an issue of that injury." Under these facts, Battles argues, the force used and the injuries sustained could be considered "*de minimis*." *See Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000)(grabbed plaintiff and shoved him a few feet against vehicle, pushed knee in back and head against van, and handcuffed him); *Gold v. City of Miami*, 121 F.3d 1442, 1444 (11th Cir. 1997)(handcuffed too tightly and too long); *Jones v. City of Dothan*, 121 F.3d 1456, 1458 (11th Cir. 1997)(slammed plaintiff against the wall, kicked his legs apart and required plaintiff to raise his hands above his head as officer carried out arrest); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir. 1999)(pushed plaintiff against wall while handcuffed), *modified*, 14 F.3d 583 (11th Cir. 1994).[38] Even if not *de minimis*, Battles adds, "the use of a lateral vascular neck restraint to restrain a suspect who has refused to stop his vehicle, who could be armed, who actively resists arrest, who attempts to flee, and who presents a danger to the arresting officers is not objectively unreasonable."

Moreover, Battles argues, because Battles did not violate Cooley's constitutional rights, it is unnecessary to reach the second inquiry – whether the right was "clearly established." According to Battles, the right to be free from the force used was not "clearly established"given the facts of this case.[39] Neither the Supreme Court, this court, or the Supreme Court of Alabama, Battles argues, has held that a LVNR constitutes excessive force in the context of restraining a suspect resisting arrest. In fact, Battles contends, the Eleventh Circuit determined that a "choke hold" used in the course of an arrest was not excessive force. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559-60 (11th

---

[38] These cases (finding the force applied *de minimis*) and the parenthetical summaries are taken from *Vinyard v. Wilson*, 311 F.3d 1340, 1348 n. 13 (11th Cir. 2002).

[39] "In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003).

Cir. 1993).  Furthermore, Battles argues, plaintiff's active resistance, attempts to flee, and potential

danger to arresting officers distinguish this case from decisions where force applied after the arrestee

was handcuffed and no longer posed a threat was deemed excessive.[40]

### 3.   Malicious Prosecution Claim is Premature, and Battles is not the Proper Defendant[41].

Battles repeats arguments from his motion to dismiss, *see supra* pp. 12-14, involving the

application of *Heck v. Humphrey* to the instant case.  Additionally, Battles argues, he is not the

proper defendant, since he is not a prosecutor, did not file charges against plaintiff, and there is no

evidence that he "improperly influenced the decision to prosecute" Cooley.  *See Eubanks v. Gerwen*,

40 F.3d 1157, 1161 (11th Cir. 1994)(finding police chief and police officer not proper targets of

malicious prosecution claim where they were not responsible for the decision to prosecute, did not

improperly influence prosecution, and fully apprised state attorney of all relevant evidence

regarding suspect's guilt).

### 4.   Plaintiff's Injunctive Relief Claim is Barred by *Younger* Abstention.

Defendant repeats arguments provided in support of his motion to dismiss, *see supra*.

---

[40] *See Vinyard*, 311 F.3d at 1348-49 (denying qualified immunity where officer stopped patrol car, grabbed arrestee with sufficient force to bruise her arm and breast, and used pepper spray on arrestee where arrestee was handcuffed, secured in back of patrol car, and posed no threat to officer or public); *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002)(denying qualified immunity where officer slammed arrestee's "head against the trunk [of patrol car] after she was arrested, handcuffed, and completely secured . . . ."); *Slicker v. Jackson*, 215 F.3d 1225, 1232-33 (11th Cir. 2000)(denying qualified immunity to officers who slammed arrestee's head into pavement "even though he was handcuffed and did not resist, attempt to flee, or struggle with officers in any way"); *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000)(denying qualified immunity where officers let dog attack plaintiff where plaintiff immediately submitted to officers, did not attempt to resist or flee, and posed no threat to officers); and *Smith v. Mattox*, 127 F.3d 1416, 1420 (11th Cir. 1997)(denying qualified immunity to officer who broke the arm of unresisting arrestee).

[41] This claim appears in Count II of the complaint.

**B.**   **City of Anniston's Motion**[42]

**1.**   **Introduction**

While Smith, Garrison, Dobbin, and McKleroy are all Anniston employees, the City contends, Battles is not.  Instead, he is employed by the District Attorney for the Seventh Judicial Circuit and assigned to the Calhoun/Cleburne County Drug & Violent Crime Task Force.  After recounting the version of facts stated earlier in this memorandum opinion (as affirmed by Battles's and Smith's affidavits), the City notes, Officers Garrison and McKleroy assisted Smith and Battles in pulling Cooley's hands behind his back and handcuffing him.[43]

No Anniston police officer, the City contends, deviated from the City's standard operating procedures at any time during Cooley's arrest.  When Officer Garrison transported plaintiff to the Task Force Office for booking, the City alleges, at no time did plaintiff complaint about being injured.  Officer Garrison observed no injuries.  Smith declared that when he asked Cooley during booking whether he was injured, plaintiff responded only that his knees were scraped and he did not want medical attention.

---

[42] The City requests summary judgment on all of plaintiff's claims and an entry of final judgment pursuant to Rule 54(b), alleging multiple claims and parties involved in this case and no just reason for delay in rendering final judgment on claims against the City.

[43] Garrison's affidavit provides:

> I did not actually make the stop of Mr. Cooley's vehicle, but arrived within seconds from the time Mr. Cooley finally pulled the vehicle over.  When I stepped out of my patrol vehicle, I went immediately to assist Officer Chuck Battles and Officer Phillips Smith, who were struggling with Mr. Cooley and verbally telling him to stop resisting.  The struggle was near an end when I arrived, and I only assisted in getting Mr. Cooley's hands behind his back and cuffed.

2.     **COUNT ONE** [44]

A.     **§ 1983 Excessive Force Claim**

Relying on *Graham v. Connor*, 490 U.S. 386 (1989), the City argues: "[§ 1983] 'is not itself a source of substantive rights' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"(citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). Therefore, the City contends, analysis of § 1983 claims begins by identifying the Constitutional amendment which protects against the alleged deprivation. *Id.* Despite plaintiff's invocation of several different amendments to the Constitution, the City contends, Count One's excessive force claim must be brought pursuant to the Fourth Amendment.

According to the City, no *respondeat superior* liability exists under § 1983; municipalities like Anniston can only be liable for constitutional deprivations for "acts which the [city] has officially sanctioned or ordered." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). A municipality's acts are its governmental policies. *Id.* Therefore, the City argues, plaintiff's claim of excessive force requires proof that excessive force was caused by an unconstitutional policy of the City. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978); *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996). The high standard of proof was adopted because:

> [t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident. Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983

_____

[44] At the outset, the City asserts, plaintiff's commingling of various causes of action has resulted in the City having to "address each and every possible claim . . . . If Plaintiff claims that there is a cause of action in his complaint that the City has not addressed, it is because such claim could not be gleaned from Plaintiff's pleading. If such a happenstance should occur, the City respectfully requests leave from this Court to file a supplemental brief to address any such claim."

> on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities . . . ."

*See City of Canton v. Harris*, 489 U.S. 378, 391-92 (1989). *See also Board of County Com'rs v. Brown*, 520 U.S. 397 (1997)("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability.")

In this case, the City argues, there is no evidence that: (1) plaintiff was subjected to unconstitutional excessive force; (2) the City's policies are unconstitutional; or (3) any unconstitutional municipal policy motivated the violation of plaintiff's rights. Regarding (1), defendant asserts, "When an officer lawfully arrests an individual for the commission of a crime, no matter how minor the offense, the officer is entitled under controlling Supreme Court precedent to effectuate a full custodial arrest." *See Lee v. Ferraro*, 284 F.3d 1188, 1196-1197 (11th Cir. 2002). Factors to be considered in determining whether an officer's conduct is objectively reasonable include the severity of the crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *See supra*, Vinyard at 1347 (quoting *Graham*). Here, "the application of *de minimis* foce, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *See Nolin* at 1257. The City echoes arguments offered by defendant Battles. *See supra*.

Further, the City asserts, the facts of this case are analogous to those of *Durruthy v. Pastor*, 351 F.3d 1080 (11th Cir. 2003). In that case, a freelance cameraman was arrested in a busy Miami intersection as police were trying to keep the streets clear on the day after the federal government removed Elian Gonzalez from his Miami relatives in order to return him to his Cuban relatives. After police officers had cleared the demonstrators from the street, the police arrested cameraman Bernstein and escorted him through the middle of the cleared street. As plaintiff ran into the street

26

to film Bernstein's arrest, an officer instructed the plaintiff to get out of the street. The plaintiff backpedaled toward the sidewalk while continuing to film. As plaintiff approached the sidewalk, two officers grabbed him from behind, pulled him to the ground, and struggled to pin plaintiff's arms behind him and apply handcuffs. During this process, the officers kneed plaintiff in the back while plaintiff pleaded, "Sir, my arm . . . please sir . . . I am going peacefully, sir." The plaintiff was charged with resisting, obstructing, or opposing an officer, but the charges were ultimately dropped. The Eleventh Circuit held that the force was not excessive because the physical restraint and handcuffing were objectively reasonable and the force used was de minimis.[45] Unlike the *Durruthy* plaintiff, the City contends, Cooley actively and persistently resisted arrest despite several warnings.[46]

Moreover, the City argues, the City's policies on the use of force are constitutional. Municipal policies can be formal express governmental statements (such as a policy statement), an ordinance, a regulation, or a decision officially adopted and promulgated by the entity's governmental body. *See Monell, supra.* Undoubtedly, the City argues, its written standard operating procedures regarding force pass constitutional muster. While a municipality can be held liable under § 1983 for an informal policy/custom even though the custom directly contradicts the formal policy, a single unconstitutional act by a non-policymaking municipal employee is not evidence of a custom. Instead, defendant contends, a § 1983 plaintiff must present evidence of a "persistent and widespread practice." *See Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001). Since Cooley cannot establish such a widespread practice, the City asserts, it cannot be held liable.

---

[45] Additionally, the City relies upon *Nolin* and *Jones, see supra.*

[46] As previously noted, Cooley disputes this fact.

Finally, the City contends, the required causal connection between the City's policies and a deprivation of Cooley's rights cannot be shown.[47]  A direct causal link between the policy or custom and the alleged constitutional deprivation must be shown. *See City of Canton*, 489 U.S. at 391; *Collins v. City of Harker Heights*, 503 U.S. 115, 123 (1992).[48]

### B.    Alabama State Law Wantonness Claim

According to defendant, Alabama Code § 11-47-190 limits municipal liability to injuries suffered through "neglect, carelessness or unskillfulness" and bars any wantonness claim as a matter of law. *See Neighbors v. City of Birmingham*, 384 So. 2d 113 (Ala. 1980)(finding municipality not liable for malicious prosecution);[49] *Brooks v. City of Birmingham*, 584 So. 2d 451 (Ala. 1991); *Altmayer v. City of Daphne*, 613 So. 2d 366 (Ala. 1993)(determining municipality not liable for its agents' torts, i.e., misrepresentation and promissory fraud).

### C.    Alabama State Law Respondeat Superior Claims Based on Negligent Acts of Its Employees, Officers, or Agents.

§ 11-47-190 of the Alabama Code provides: "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done

---

[47] *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986); *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1983).

Moreover, the City contends, plaintiff must show that the City's unconstitutional policies were the "proximate cause" or "moving force" behind the violation of his constitutional rights. *See Pembaur*, 475 U.S. at 478 n.6; *City of Canton, supra.*

[48] The City relies upon the Fourth Circuit's pronouncement: "Proof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact."

[49] In *Franklin v. City of Huntsville*, the court notes, the Alabama Supreme Court affirmed *Neighbors*'s holding that a municipality is immune from malicious prosecution claims but rejected any extension of *Neighbors* to provide immunity to claims of false arrest and imprisonment under § 11-47-190. As such, *Franklin* noted that it overruled *Brooks* to the extent it was contrary to that holding.

28

or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee

of the municipality engaged in work therefor and while acting in the line of his or her duty . . . ."

According to the City, plaintiff cannot establish that its employees, agents, or officers were

negligent.  Additionally, the City asserts, it is entitled to immunity.  Regarding immunity, the

Alabama Supreme Court has held that when a municipality is alleged to be liable based on

respondeat superior, if the agent, officer, or employee is immune, the municipality is immune as

well.  The City quotes *City of Bayou La Batre v. Robinson*, 785 So. 2d 1128, 1131 and n.3 (Ala.

2000) as follows:

> We now turn to the extent to which the municipality can escape liability
> by reason of judicial immunity enjoyed by its magistrate.
> This court recognized in *Gore v. City of Hoover*, 559 So. 2d 163, 165
> (Ala. 1990), that, under principles of vicarious liability, where a municipal
> employee enjoys immunity, the municipality likewise is immune as to
> claims based on the employee's conduct.  While some aspects of *Gore*
> were overruled in *Franklin*, this holding as to immunity was not. [FN3]

> . . . .

> FN 3 *See Richards v. Southeast Alabama Youth Services Diversion Center*,
> 105 F. Supp. 2d 1268, 1289 (M.D. Ala. 2000).  In that case, Judge
> Albritton correctly analyzed the effect of *Franklin* on that aspect of *Gore*
> dealing with immunity:

>> In *Gore,* the Alabama Supreme Court stated that because a city
>> could only be held liable by respondeat superior, if the agent was
>> immune from liability, the city was also immune from liability.
>> In so holding, the court relied on cases establishing that where
>> a jury has found that the agent is not liable, the principal also cannot
>> be held liable.  This principle was later applied by the Alabama
>> Supreme Court to county defendants in *Roden v. Wright*, 646 So.
>> 2d 605, 611 (Ala. 1994).  Significantly, the Alabama Supreme Court
>> also stated that if the agent was entitled to discretionary function
>> immunity in his individual capacity, 'the other Marshall County
>> defendants, whose liability is based on the doctrine of respondeat
>> superior, are similarly entitled to immunity.' *Id.* at 611.  In so
>> holding, the court relied on the *Gore* decision.  *Id.*  Although *Gore*

29

was subsequently overruled by *Franklin v. City of Huntsville*, 670 So. 2d 848 (Ala. 1995), the *Franklin* decision only overruled the language in *Gore* indicating that a city could not be held liable for claims of negligent false arrest and imprisonment. As the *Franklin* court pointed out, *Gore* was distinct from *Franklin* in that *Gore* rested on the fact that the agent was immune, so the principal was also immune, while in *Franklin* there was no issue of 'vicarious' immunity. The Alabama Supreme Court's overruling *Gore* does not, therefore, mean that the holding of *Roden* that the county and the county commission could not be held liable for tortious interference and similar tort claims when their agent was given discretionary function immunity is overruled.

Furthermore, the City argues, § 6-5-338(a) of the Alabama Code gives discretionary function immunity to municipal police officers "from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties," and subsection (b) extends this immunity to the municipality employing the officer.[50] Even if there was evidence that Officers Smith, Garrison, McKelroy, or Dobbin acted negligently, carelessly, or unskillfully (which there is not), the City contends, they would be immune because they were exercising judgment in the enforcement of the criminal laws while conducting the arrest. According to defendant, plaintiff has not proved facts necessary to the only exception to immunity, i.e., that officers acted willfully, maliciously, fraudulently, in bad faith,[51] beyond their authority, or under a mistaken interpretation of the law.

### D.    Alabama State Law Negligent Hiring, Training, and Supervision

---

[50] Subsection (b) reads: "This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers . . . ."

Defendant relies upon *Ex parte Cranman,* which held that state agents are immune when the agent's exercise of judgment in the enforcement of criminal laws, including arresting, provides the basis of the plaintiff's claim. *See Cranman*, 792 So. 2d at 405. According to the City, *Cranman* principles were applied to police officer discretionary function cases in *Telfare v. City of Huntsville*, 841 So. 2d 1222 (Ala. 2002).

[51] If such proof was offered, defendant argues, the City would still not be liable. *See Neighbors.* According to the City, it would only be liable if the actions of the officers were (1) beyond their authority or (2) under a mistaken interpretation of the law.

By the City's account, Alabama courts have treated all of these claims the same because they all require the plaintiff to show that the alleged incompetence of the employee was actually known to the employer or discoverable through due diligence.[52]  First, the City observes, Battles is not even an employee, agent, or officer of the City, nor under the City's control/supervision.  Second, the City argues, Cooley has not identified any City officer, employee, or agent that acted improperly on August 29, 2002, "let alone that his actions were the direct and proximate result of the City's negligent hiring, training, or supervision."  Third, even if such an agent had been identified, the City would still be entitled to summary judgment because there is no evidence that any of its employees were incompetent or that the City knew or should have known of such alleged incompetence.[53]

---

[52] *See Sanders v. Shoe Show, Inc.*, 778 So. 2d 820 (Ala. Civ. App. 2000)(including this as critical element of negligent hiring claim)(citing *Lane v. Central Bank of Alabama, NA*, 425 So. 2d 1098 (Ala. 1983); *Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885, 889 (Ala. 1995)(fatal failure of plaintiff to offer evidence that the employer knew of the supervisor's incompetency prior to her last day of employment, when she reported him); *City of Green Cove Springs v. Donaldson*, 348 F.2d 197, 201 (5th Cir. 1965)(reversal of judgment against city for negligent hiring officer who assaulted and raped plaintiff because officer did not previously demonstrate propensity for sexual misconduct); *Zielke v. AmSouth Bank, N.A.*, 703 So. 2d 354, 358-59 (Ala. Civ. App. 1996)(no distinction between claims of wrongful supervision and training); *Portera v. Winn-Dixie of Montgomery, Inc.*, 996 F. Supp. 1418 (M.D. Ala. 1998)(holding that plaintiff must show employer knew or should have know of employee's incompetence).

[53] Here, the City relies upon *Big B, Inc. v. Cottingham*:

> In the master and servant relationship, the master is held responsible for the servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him.  Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercise due and proper diligence, he would have learned that which would charge him in the law with such knowledge.  It is incumbent on the party charging negligence to show it by proper evidence.  This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such a nature, character, and frequency that he master, in the exercise of due care, must have had them brought to his notice.  While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the thing complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant to leave it to the jury whether they would have come to his knowledge, had he exercised ordinary care.

*See* 634 So. 2d 999, 1003 (quoting *Lane v. Central Bank* and *Thompson v. Havard*, 235 So. 2d 853 (Ala. 1970)).

### 3.   COUNT TWO[54]

#### A.   Alabama Malicious Prosecution

Citing the elements of a malicious prosecution claim,[55] the City asserts its entitlement to summary judgment since (1) plaintiff cannot show "malice"[56] and (2) plaintiff cannot show "termination of the judicial proceeding favorably to the plaintiff" because of the pending claims in Anniston municipal court which have not been adjudicated or finally resolved.

#### B.   Alabama State Law False Arrest/Imprisonment

False arrest and false imprisonment are analyzed in conjunction, the City asserts. *See Grant v. Dolgen Corp.*, 738 So. 2d 892, 894 (Ala. Civ. App. 1998); *see, e.g., Kmart Corp. v. Perdue*, 708 So. 2d 106 (Ala. 1997)("False arrest, or false imprisonment, consists of 'the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty.' Ala. Code 1975, § 6-5-170"). In *Franklin v. City of Huntsville, see supra*, the Alabama Supreme Court clarified that false arrest claims based on the neglect, carelessness or unskillfulness of a municipality's agents, officers, and employees are not barred. However, the City argues, Cooley has not established the basis of such a claim. The City also repeats its immunity arguments, *see*

---

[54] Because Count Two did not reference section 1983, the City asserts, it assumes plaintiff only intended to assert Alabama state law claims. As an initial matter, the City argues, any state law claims already addressed above are duplicative and should be dismissed for the reasons set forth *supra*. The City proceeds to address any other possible state law claims in Count Two. Further, the City observes, plaintiff sought $ 100,000 in Count Two, which represents the state law municipal cap on damages. *See* Ala. Code § 11-47-190 ("no recovery may be had under any judgment or combination of judgments . . . arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person . . . ."

[55] These elements include: (1) judicial proceeding initiated by the defendant; (2) lack of probable cause; (3) malice; (4) termination of the judicial proceeding favorably to the plaintiff; and (5) damages. *See Escoffier v. Anderson*, 557 So. 2d 844, 845 (Ala. Civ. App. 1990).

[56] According to the City, the Alabama Supreme Court has held that § 11-47-190 bars a malicious prosecution claim against a municipality in that the municipality cannot be liable for malicious acts of its agents, officers, and/or employees. *See Franklin v. City of Huntsville*, 670 So. 2d 848 (Ala. 1995); *Neighbors, supra*.

32

*supra*.

### 4.    **COUNT THREE**

Any Section 1983 claims in Count Three, the City argues, duplicate Count One and should be dismissed for the same reasons, *see supra*. The City then addresses additional possible claims in Count Three.

### A.    **§ 1983 Claims for Deprivation of "Life, Liberty and the Pursuit of Happiness" and/or the First Amendment**

Life, liberty, and the pursuit of happiness, the City argues, are mentioned only in the Declaration of Independence, not the Constitution. Furthermore, the City contends: "[T]he City cannot decipher how the facts asserted in the Plaintiff's complaint set forth a violation of the First Amendment as there is no evidence that the defendants abridged his constitutional rights to free exercise of religion, speech, press, assembly, or petition of the government."

### B.    **§ 1983 Claims for Violation of the Alabama Constitution**

Even if proof existed of a violation of the Alabama Constitution, the City contends, the violation of a state constitution cannot form the basis of a § 1983 claim. *See Baker v. McCollan*, 443 U.S. 137 (1979); *Paul v. Davis*, 424 U.S. 693 (1976).

### C.    **§ 1983 Claims for "Cruel and Unusual Punishment" under the Eighth and Fourteenth Amendments**

The Eighth Amendment forbids "cruel and unusual punishment" of convicted prisoners, while the Fourteenth amendment forbids "cruel and unusual punishment of pretrial detainees. According to the City, Cooley does not have the status of a convicted prisoner, so the Eighth Amendment is inapplicable. As for the Fourteenth Amendment, the City argues, Cooley's count provides no insight into how he suffered "cruel and unusual" punishment independent from his

33

allegations of excessive force, which have been addressed *supra*.

> **D.**  **§ 1983 Claims for Alleged Deprivation of "Fair Trial" and "Trial by Jury" under the Fifth, Sixth, Eighth, and Fourteenth Amendments.**

Under the present facts, the City argues, no such claims have been proven.

**5.**  **COUNT FOUR**

This count, the City notes, seeks to use section 1983 to restrain the City from further prosecution of plaintiff for his criminal actions made the basis of his arrest, claiming he would be deprived of "his right to be free from double jeopardy in violation of both the State Constitution of Alabama and the United States Constitution." First, the City argues, the City has already filed new charges against Cooley which are currently pending, making Count Four moot. Second and more importantly, the City contends, there has been no Fifth Amendment violation or danger of such a violation. Jeopardy only attaches, the City asserts, when the jury is impaneled and sworn, or in the case of a bench trial, when the court begins to receive evidence. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977); *Willhauck v. Flanagan*, 448 U.S. 1323, 1325-1326. Also, the City repeats, a violation of a state constitution cannot form the basis of a § 1983 claim.

**II.**  **Plaintiff's Response**

**A.**  **Introduction**

According to Cooley, he can meet his burden by "demonstrating a municipal custom and practice of deliberate indifference by the City's policy-makers in the supervision and control of its officers." Cooley cites *Jane Doe "A" v. The Special School District of St. Louis County*, 901 F.2d 642 (8th Cir. 1990) and *Harris v. City of Pagedale*, 821 F.2d 499 (8th Cir. 1987). State law determines who are policy-makers, Cooley contends, and Anniston Chief of Police John Dryden is the policymaker for purposes of the custom, practice, and policies relating to training, supervision,

34

control, and discipline of the City of Anniston police officers. Cooley states: "Said policy-makers shall be added as X, Y,Z, when ascertained." The chief, Cooley contends, can be sued in his official[57] or individual capacities. According to Cooley, a determination that the failures were particular to an officer such as Battles is not legally required.[58] Cooley contends that an officer who is in a position to prevent another officer from violating the plaintiff's constitutional rights, but fails to do so, is jointly liable.[59]

### B. Qualified Immunity Does Not Protect Officer Battles, Chief Dryden and the City of Anniston

In *Graham v. Connor*, 490 U.S. 386 (1989), Cooley argues, the Supreme Court found that excessive force claims arising out of arrests, investigatory stops, or other seizures of "free citizens" are properly analyzed under the Fourth Amendment's objective reasonableness standard. The court examines the "facts and circumstances of each particular case, including the severity of the crime at issue, and whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. An officer's evil intention will not make a Fourth Amendment violation out of an objectively reasonable use of force, and a good intention will not make an objectively unreasonable use of force

---

[57] A suit in the chief's official capacity, Cooley argues, is tantamount to suing the City. *See Clay v. Conlee*, 815 F.2d 1164, 1165 (8th Cir. 1987)(citing *Kentucky v. Graham*, 473 U.S. 159 (1985)). Regarding suit in his individual capacity, Cooley relies upon *Clay* and *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991). The court notes that the cited page of *Clay* is a headnote and not the body of the opinion. The appropriate cite appears to be p. 1070. Dryden is not sued.

[58] Apparently, the court notes, Cooley has not cited authority for this principle.

[59] Cooley relies on the following cases: *Gagnon v. Ball*, 696 F.2d 17 (2d Cir. 1982)("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."); *O'Neil v. Krzeminski*, 839F.2d 9, 11-12 (2d Cir. 1988); *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990); *Byrid v. Brishke*, 466 F.2d 6 (7th Cir. 1972); *Webb v. Hiykel*, 713 F.2d 405 (8th Cir. 1983); *Fundiler v. Cooper City*, 777 F.2d 1436, 1441 (11th Cir. 1985).

constitutional.  *Id.* at 397.  Cooley argues: "[T]he facts presented were that Jerry Cooley was suspected by Defendant Officers as of the traffic stop of nothing more than failing to wear a seat belt.  The facts indicate that he was submitting to the control of the defendant officers when he was placed in the choke-hold thus Cooley argues that the actions of the Defendant officers displayed the culpable evil intentions of the officers.  Cooley further argues that these facts at the very least present a jury question."

According to plaintiff, a jury must determine whether a police officer acted with malice, *see Pierson v. Ray*, 386 U.S. 547, 555 (1967),[60] and the more force used preempts the immunity defense.[61]  Plaintiff acknowledges that he must allege facts sufficient to indicate defendant's action violated "clearly established" constitutional law.  *See Washington v. Newsome*, 977 F.2d 991 (6th Cir. 1993).  After a plaintiff proves a § 1983 violation, plaintiff contends, the court considers a qualified immunity defense.  *See Black v. Parke*, 4 F.3d 442 (6th Cir. 1993).[62]

In *Guffey v. Wyatt*, 18 F.3d 869 (10th Cir. 1994), Cooley contends, the Tenth Circuit noted different qualified immunity analyses with respect to excessive force and lack of probable cause claims.  The *Guffey* court stated: "If a plaintiff alleges a police officer has used excessive force in violation of the Fourth Amendment, the qualified immunity inquiry becomes indistinguishable from

---

[60] *Pierson's* only discussion of "malice," the court observes, appears to be in the context of affording judicial immunity to the judge for his role in the respondents' convictions.

[61] *Pierson* does not clearly express the cited proposition.

[62] Further, plaintiff argues, while the application of qualified immunity is generally an issue of law to be determined by the court, if there is a genuine issue of material fact that relates to whether the office actually did the acts which constitute a violation of a clearly established right, it is improper to grant summary judgment on the basis of qualified immunity.  *Id.*

"Summary judgment would not be appropriate if there is a factual dispute (i.e. a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts which violate clearly established rights."  *See Poe v. Hayden*, 853 F.2d 418, 425 (6th Cir. 1989).

the merits of the underlying action." Further, Cooley argues, the Sixth Circuit found that the court

may not be able to make a legal determination if the exact character of the action is unknown. *See*

*Branden v. Cureton*, 882 F.2d 211 (6th Cir. 1989).  In that case, the jury would become the final

arbiter of the claim of immunity since the legal question completely depends on the facts accepted

by the jury.  *Id.* at 215-16.[63]  Furthermore, Cooley contends, other circuits have found that a

deliberate police falsehood or reckless disregard behind a facially valid search warrant bars any

immunity defense.  *See Beard v. City of Northglen, Colo*, 24 F.3d 110, 115 (10th Cir. 1994).

Likewise, if an officer demonstrates deliberate indifference to the medical needs of an inmate, no

immunity attaches.  *See Hamilton v. Endell*, 981 F.2d 1062 (9th Cir. 1992).[64]  Moreover, Cooley

---

[63] The Fourth Circuit, Cooley adds, concluded that the critical issue for qualified immunity was whether under the undisputed facts a reasonable police officer could have probable cause to believe the plaintiff posed an immediate deadly threat. *See Slattery v. Rizzo*, 939 F.2d 213 (4th Cir. 1994).

[64] The court notes that *Hamilton* was abrogated by *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1045 (9th Cir. 2002) as follows:

Whether the denial of qualified immunity was appropriate in this case turns on whether <u>*Hamilton*</u> remains good law in light of <u>*Saucier*.</u> In <u>*Hamilton,*</u> a prisoner alleged that officials were deliberately indifferent to his serious medical needs; the prison officials sought summary judgment on the basis of qualified immunity. The district court denied summary judgment and we upheld it because triable issues existed as to whether the officials were deliberately indifferent. In doing so, we stated: "A finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who *deliberately* ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law. In order to determine whether summary judgment was properly denied, we need only determine whether the plaintiff established a genuine issue of material fact as to whether the defendant prison officials were deliberately indifferent to his medical needs." <u>*Hamilton*, 981 F.2d at 1066</u> (citation omitted).

In <u>*Saucier,*</u> the claim involved excessive use of force in making an arrest; the arresting officer asserted qualified immunity; and this court held that summary judgment based on qualified immunity was inappropriate because the constitutional inquiry--whether unreasonable force was used in making the arrest--and the inquiry on qualified immunity were the same. We reasoned that both concern the objective reasonableness of the officer's conduct in light of the circumstances that he confronted. The Supreme Court reversed, observing that the goal of qualified immunity would be undermined if summary judgment were denied every time a material issue of fact remains on an excessive force claim. <u>*Saucier*, 533 U.S. at 202.</u>

*Saucier's* key point is that the qualified immunity inquiry is separate from the constitutional inquiry. In the Fourth Amendment context, the Supreme Court rejected the view that the inquiries merge because a reasonable officer could not possibly think it was reasonable, *i.e.,* lawful, to use unreasonable force. The Fords make essentially the same argument in the Eighth Amendment context, that a reasonable officer could not possibly think it was reasonable, *i.e.,* lawful, to be deliberately indifferent to a substantial risk of serious harm. However, it is no less true for purposes of the Eighth Amendment than it was in <u>*Saucier*</u> that the qualified immunity inquiry "has a further dimension." <u>*Id.* at 205; *see Hope v. Pelzer*, 536 U.S. 730, ---- - ----, 122 S.Ct. 2508, 2513-16, 153 L.Ed.2d 666</u>

argues, *Wood v. Sunn* suggested that any claim based on a deliberate indifference standard is not subject to the immunity defense. *See* 852 F. 2d 1205, 1209 (9th Cir. 1989). *Wood* specifically stated: "Despite *Creighton*, the *Whitley* rule that 'a finding of deliberate indifference is inconsistent with . . . qualified immunity' remains the law of the circuit."[65]

   Cooley distinguishes *Harlow* as follows: "Defendants failed to mention, however, that the

---

(2002) (applying *Saucier* in an Eighth Amendment case and separately analyzing the qualified immunity and constitutional inquiries). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier,* 533 U.S. at 205. The Court emphasized that it is often difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation that he faces. This is why "all but the plainly incompetent or those who knowingly violate the law" have immunity from suit; officers can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id.* at 202 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)); *see Jeffers,* 267 F.3d at 909 (noting in Eighth Amendment case that in *Saucier* "the Court emphasized the broad discretion that must be afforded to police officers who face tense situations, and the importance of granting immunity even when officers make mistakes").

   Caden, Arnold and Williams contend that *Saucier* 's rationale applies here because for a prudent prison official to be able to determine whether the Eighth Amendment compels him to take particular action to protect an inmate, he must not only know the facts giving rise to a risk but must also be able to determine whether the level of risk is "substantial." This, they submit, is inherently nebulous. The Fords counter that Eighth Amendment claims are different, because Fourth Amendment excessive force claims are determined by a purely objective test of reasonableness while the plaintiff in the Eighth Amendment context must also establish that a prison official had the requisite state of mind of deliberate indifference. For this reason, they argue, even if *Saucier* applies, the question remains whether a reasonable prison official could have believed it would be lawful consciously to disregard the substantial risk of harm posed by double-celling Diesso with Ford.

   While Eighth Amendment claims depend in part on a subjective test that does not fit easily with the qualified immunity inquiry, there is an objective component as well. To violate the Eighth Amendment, the deprivation alleged must *objectively* be sufficiently serious; and the prison official must *subjectively* have a sufficiently culpable state of mind. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). For claims challenging conditions of confinement, the state of mind is deliberate indifference to *1050 inmate safety. *Id.* "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Thus, a reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious harm, could know all of the facts yet mistakenly, but reasonably, perceive that the exposure in any given situation was not that high. In these circumstances, he would be entitled to qualified immunity. *Saucier,* 533 U.S. at 205.
Accordingly, we conclude that *Hamilton,* which collapses the deliberate indifference part of the constitutional inquiry into the qualified immunity inquiry, has been undermined by *Saucier.* Instead, courts must follow the *Saucier* framework. We turn to it now.

---

[65] Further, the court observes, the initial *Wood* opinion cited by plaintiff was amended and superseded by *Wood v. Sunn,* 865 F.2d 982 (9th Cir. 1988). That opinion in turn was vacated by 880 F.2d 1011 (9th Cir. 1989), which remanded to the district court with instructions to dismiss the complaint with prejudice.

court in *Harlow* treated the qualified immunity inquiry as a single question and assumed that if the law was clearly established a reasonable public official knew this and acted accordingly." For a representative sample of cases denying qualified immunity, plaintiff presents *Morgan v. Woessneer*, 997 F.2d 1244 (9th Cir. 1993) and *Centtanni v. Eight Unknown Officers*, 15 F.3d 587 (6th Cir. 1994)(finding no reasonable officer would believe that a suspect could be held at a police station without probable cause for four hours pursuant to a Terry stop).

Relying on *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994), plaintiff contends: "[I]f a jury can determine that the choking of Jerry Cooley was without probable cause, then as a legal matter no reasonable officer would believe that such conduct would not violate plaintiff's constitutional rights." In some jurisdictions, Cooley asserts, an officer's subjective beliefs have been deemed irrelevant to the determination of qualified immunity. *See Morgan* and *Bridgewater v. Caples*, 23 F.3d 1447, 1449 (8th Cir. 1994). Additionally, Cooley argues, some circuits have placed the jury as the sole arbiter of the defendant's conduct and a qualified immunity defense if there are varying versions of the story. *Brandenburg v. Cureton*, 882 F. 2d 211 (6th Cir. 1989).

Plaintiff also relies upon the expert opinion of Mr. Fred G. Robinette ("Robinette") that the officers' actions were clearly excessive. *See* Robinette Affidavit. Further, Cooley argues, he did not resist the officers but was just unbuckling his seat belt. Cooley further asserts: "Defendant Officer Battles' conduct set into motion his self created aggression, which ultimately led to the unjustified choking of Jerry Cooley." According to Cooley, he attempted to surrender to Battles by placing his hand in the air in front of his face; despite knowing plaintiff was unarmed, Cooley asserts, Battles began to repeatedly choke plaintiff. According to Cooley, to exert this level of force on an unarmed man presents a fact question which cannot be resolved at summary judgment, relying

on *Border v. City of Huntsville et al.*, 2003 WL 21715993 (Ala. 2003).

### C.    Plaintiff Can Establish a Violation of the Fourth Amendment.

This issue, Cooley reiterates, should be heard by a jury. *See supra, Brandenburg* at 215016; *Yates v. City of Cleveland*, 941 F. 2d 444, 447 (6th Cir. 1991).

### D.    Supervisory Liability Exists Against Chief Dryden for the Conduct of Defendant Battles.[66]

According to Cooley, neither the City of Anniston's training manuals nor its officers/supervisors/policy makers recognize the use of a choke hold as an appropriate weapon when conducting an arrest.

### E.    Cooley's Claims Against the City of Anniston Are Valid.

As long as the constitutional tort against Battles, Chief Dryden, and/or the other defendants remain, Cooley contends, the City's liability remains. According to Cooley, no qualified immunity protects a municipality or other similar governmental employer for its good faith constitutional violation if sued in an "official capacity" under § 1983. *See Owen v. City of Independence*, 445 U.S. 622, 651 (1980)("[O]wing to the qualified immunity enjoyed by most governmental officials . . . many victims of municipality malfeasance would also be left without any remedy if the city were also allowed to assert a good-faith defense. Unless countervailing considerations counsel otherwise, the injustice of such a result should not be tolerated.")

### F.    § 1988 Liability Exists.

Plaintiff asserts its entitled to attorney fees under 42 U.S.C. § 1988(b) when liability exists as to defendants related to any significant issue, even if some claims are disallowed. *See Texas State*

---

[66] Again, the court notes, Chief Dryden has not been named as a defendant in this lawsuit.

*Teachers Assn. v. Garland Indep. School Dist.*, 489 U.S. 782 (1989).  Plaintiff argues that as long

as a party has prevailed on any significant issue in the lawsuit and achieved some of the benefit

sought in the action, he is entitled to apply for attorneys' fees.  *See Leffler v. Meer*, 60 F.3d 369, 372

(7th Cir. 1995).

## III.   **Defendants' Reply**

### A.    **Battles's Reply**[67]

First, Battles notes, he has moved to strike the affidavits of both Jerry Cooley[68] and Fred G.

---

[67] Battles adopts by reference the City's arguments in favor of summary judgment.  In particular, Battles assets, if plaintiff has sufficiently stated any state law claims, Battles is entitled to discretionary function immunity under Ala. Code § 6-5-338 and *Telfare, see supra*.  Battles further echoes the City's argument that Cooley has failed to show any of the officers involved in his arrest acted negligently, carelessly, or unskillfully.

[68]In his motion to strike Cooley's affidavit, defendant repeats facts cited earlier in this memorandum opinion about attempts to secure plaintiff's deposition.  Further, Battles argues, Cooley's refusal to be deposed represented an improper attempt to make a "blanket" invocation of the Fifth Amendment.  *See United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir. 1969)(involving a tax payer protest of a civil summons)("[E]ven if the danger of self-incrimination is great, [the] remedy is not to voice a blanket refusal to produce his records or to testify.  Instead, he must present himself with his records for questioning, and as to each question and each record elect to raise or not to raise the defense.")

Battles also relies upon *SEC v. Benson*, 657 F. Supp. 1122, 1129 (S.D.N.Y. 1987).  There, the defendant in a securities fraud case invoked the Fifth Amendment and refused to cooperate in discovery but then sought to conduct discovery to oppose summary judgment.  The district court noted:

> On the other hand, the Fifth Amendment, of course, protects Benson from compelled testimony. He may not be required to testify or furnish discovery.  It would be abuse of the Fifth Amendment privilege to allow a civil litigant to use to offer proofs while denying the adversary discovery of his contentions . . . . Defendant has . . . chosen the tactic of seeking to bar plaintiff's access to the evidence.  At least to the extent of pleading the Fifth Amendment, that is his right.  But, in a civil case, he cannot have it both ways.  By hiding behind the protection of the Fifth Amendment as to his contentions, he gives up the right to prove them.  By his initial obstruction of discovery and his subsequent assertion of the privilege, defendant has forfeited the right to offer evidence disputing the plaintiff's evidence or supporting his own denials.  There is no reason why judgment should not be granted on this record.

*Id.*

Robinette, III.[69] Moreover, Battles argues, Cooley's affidavit does not dispute that Smith and Battles followed him for many blocks with their vehicle's blue light flashing and siren blaring. What Cooley thought at the time, Battles contends, is irrelevant, because "under this standard we consider what happened from an officer's point of view and assess its reasonableness objectively." *See Smith v. City of Chicago*, 242 F.3d 737, 743 (7th Cir. 2001). Defendant argues: "A reasonable officer following Cooley on a 14-block chase through Anniston would have thought Cooley was trying to flee. This justified a higher degree of force than that needed for an ordinary minor traffic violation. As previously argued, Cooley compounded his unlawful behavior by then resisting arrest and again acting like he intended to flee on foot."

Regarding Cooley's injuries, Battles asserts, no medical evidence suggests the alleged eye injury was major. While plaintiff asserts this injury was "permanent," Battles argues, he is not a doctor and a layman's diagnoses is inadmissible to establish either the cause of his eye injury or its severity. *See Dondero v. Lenox China*, 1990 WL 36061 at * 2 (D.N.J. 1990)("Expert testimony is required to support a claim for an injury which is either subjective in nature or of the sort that its cause and degree of severity cannot be determined by laymen.") Therefore, Battles argues, the force used in this case should be considered *de minimis*.

## B.   The City's Reply

The City did not file a reply brief.

---

[69] In his motion to strike Robinette's affidavit, Battles repeats arguments made earlier in this memorandum opinion, including plaintiff's failure to timely disclose expert testimony which resulted in Battles electing not to retain an expert. Six weeks after the deadline for such disclosure, Battles argues, is too late to introduce the expert affidavit.   Again, Battles cites Rule 37(c)(1) of the Federal Rules of Civil Procedure as well as *White v. Volvo Trucks of North America, Inc.*, 211 F.R.D. 668, 669 (M.D. Ala. 2002), which refused to allow a tardily disclosed expert to testify at trial.

## CONCLUSIONS OF THE COURT

The court starts with an attempt to decipher the various claims of the plaintiff and the constitutional, statutory, or common law basis for each such claim. Improperly designated bases for claims will be dismissed. The court will determine whether remaining claims survive defendants' separate motions for summary judgment and defendant Battles's motion to dismiss and/or for judgment on the pleadings on Counts II, III, and IV.[70]

### Federal Claims

The purported federal claims to be examined are:

(1) Excessive force claim – To the extent that any such claim purports to be based on any constitutional or statutory provision other than the Fourth Amendment, the Fourteenth Amendment, and § 1983, such claims will be dismissed and not considered.

(2) Any purported § 1981 claims will be dismissed.

(3) Any purported First Amendment claim will be dismissed.

(4) Any purported claims based upon "right to a fair trial and trial by jury under the Fifth, Sixth, Eighth, and/or Fourteenth Amendments," or otherwise, will be dismissed.

(5) Any purported double jeopardy claim will be dismissed.

(6) Any Eight Amendment claim will be dismissed.

(7) Any federal and/or state malicious prosecution claim will be dismissed without prejudice as being premature.[71]

The remaining federal law claim to be considered is an excessive force claim brought

---

[70] There are only two named defendants: the City of Anniston and Battles. Purported claims against fictitious defendants will not be considered.

[71] There may be a substantial issue as to whether defendant Battles had any control over the prosecution.

43

pursuant to the Fourth Amendment as provided for under the Fourteenth Amendment, pursuant to § 1983.

**State Law Claims**

The purported state law claims to be examined are:

(1) False arrest;

(2) Malicious prosecution;

(3) Negligent hiring, training, and/or retention of Battles by the City of Anniston; and

(4) Negligence and/or wantonness.

**All Claims Against City of Anniston**

The claims against the City of Anniston will be dismissed. Battles is not an officer or employee of the City of Anniston. Furthermore, there is no substantial evidence that any action taken by any party was the result of any custom, practice, or policy of the City of Anniston, that the City of Anniston improperly hired or trained any employee or officer, or that the City of Anniston was on notice that any officer or employee needed further training.

**Claims Against Battles**

**Federal Claim**

The court briefly summarizes the facts upon which plaintiff's excessive force claim is based. As plaintiff drove through Anniston on August 29, 2002, defendant Battles and Officer Smith noted that plaintiff was not wearing a seat belt, began to follow him, and attempted to initiate a traffic stop. These officers were in an unmarked car. The officers turned on their blue lights and motioned for plaintiff to stop, without avail. The officers also allege that they turned on their siren, which plaintiff has not specifically addressed.

44

Though aware of the officers' presence, plaintiff did not stop his car until a marked police car driven by Officer Dobbin of the Anniston Police Department activated its lights. Upon seeing that marked car, plaintiff avers, he stopped at the first safe opportunity. When asked by Battles and Smith why he did not stop when their blue lights were activated, plaintiff allegedly replied that he did not know they were police officers and feared a car jacking. According to plaintiff, the officers pulled him from the car and placed him in a choke hold, stating "I'll show you how you will be 'jacked.'" Plaintiff denies resisting arrest in any way. Plaintiff claims to have been held in the choke hold long enough to suffer permanent injuries to his eye and abrasions on his arms and legs. Plaintiff has submitted no evidence regarding his eye injury other than his own affidavit.

As noted earlier, defendant disputes this evidence, alleging that Cooley stated "Y'all ain't the police," refused to exit the car when told that he was under arrest for interfering with police officers, and resisted arrest by refusing to give his hands for cuffing, attempting to break loose from their grasps, and pushing up off the ground. According to defendant, he and Agent Smith continuously commanded plaintiff to stop resisting. Battles admits to applying a "lateral vascular neck restraint" to Cooley in effectuating his arrest. Defendant allegedly witnessed only minor abrasions and scratches on Cooley. Additionally, defendant avers, Cooley did not mention his eye injury to Agent Smith during booking or to defendant at any time on the date of his arrest.

## State Law Claims

### 1.    False Arrest and Malicious Prosecution

These claims are premature because the criminal case against the plaintiff is still pending. It has not been decided on the merits. While the malicious prosecution case may have no application to Battles, both of these claims against Battles will be dismissed, without prejudice.

### 2.    Negligence and/or Wantonness

Cooley appears to allege negligence and/or wantonness based on the excessive force claim. Facts in support of the excessive force claim have been discussed *supra*.  Additionally, Cooley may be claiming negligence and/or wantonness based on what he alleges was a false arrest and malicious prosecution.

### Injunctive Relief

Two cases cited by plaintiff which purport to represent exceptions to the *Younger* case, i.e., *Dombrowski* and *Doran*, are First Amendment cases not applicable here.  The court cannot enjoin the prosecution because there is no substantial evidence of (1) bad faith or harassment, (2) lack of a reasonable expectation of obtaining a valid conviction, or (3) defendants' fault in the delays. Plaintiff's application for an injunction will be dismissed.

### Motions to Strike

Defendant Battles has moved to strike the affidavits of plaintiff and his expert.  Regarding plaintiff's affidavit, defendant asserts, plaintiff's counsel has refused to allow plaintiff to be deposed. According to defendant, this refusal is an improper attempt to make a "blanket" invocation of the Fifth Amendment privilege. After such a blanket refusal, defendant asserts, plaintiff should not now be allowed to submit an affidavit in opposition to summary judgment.  Regarding Robinette's affidavit, defendant alleges, plaintiff refused to comply with this court's scheduling order and disclose expert testimony within sixty days of that order (by December 2, 2003).  Relying on those disclosures, defendant argues, he elected not to retain his own expert.  Now, without leave of the court or substantial justification, defendant contends, plaintiff proffers an expert affidavit nearly six weeks after the applicable deadline.

46

The court will make the following additional rulings:

(1) The court will stay further consideration of the state and/or federal excessive force, false arrest, and malicious prosecution claims against Battles until disposition of the criminal case and the submission by plaintiff to deposition.

(2) The plaintiff will be given ten (10) days to show cause, if any, why the expert opinion should not be stricken for failure to give timely notice.  Defendant Battles will be given seven (7) days to respond.

This ___ of March, 2004.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

47