FILED

2004 Dec-30  PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **JERRY COOLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. CV-03-PT-2502-E** |
| | ) | |
| **CITY OF ANNISTON, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

--------------------------------------------------

| | | |
|---|---|---|
| **JERRY COOLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. CV-04-PT-2588-E** |
| | ) | |
| **CITY OF ANNISTON, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION

This cause comes on to be heard upon defendant City of Anniston, Alabama's, Motion to

Dismiss, filed on October 12, 2004.

### FACTS AND PROCEDURAL HISTORY

On September 10, 2003, plaintiff Jerry Cooley, a resident of Calhoun County, Alabama,

filed action CV-03-2502-E against the City of Anniston and Chuck Battles, a Calhoun County

Drug Task Force agent.  Also named as defendants in the Complaint were "other [law

enforcement] officers X, Y, Z (whose [n]ames will be added when [a]scertained.)"  Cooley's

Complaint in this first action contains four counts.  In Count One, Cooley alleges that Battles and

1

the unnamed law enforcement officers inflicted "excessive force" against him during an arrest on or about August 29, 2002 in violation of the U.S. Constitution and Alabama law.  Cooley also asserts that the officers' conduct was undertaken "while acting in the line and scope of [their] employment with the City of Anniston, and due to the negligence of the City of Anniston in hiring, training or retraining or [supervising the officers]."  Cooley further states that the officers' conduct was "pursuant to an official policy of the City of Anniston, or pursuant to a custom or practice endorsed or approved by the City of Anniston."

In Count Two, Cooley alleges that Battles and the Anniston officers falsely arrested him and caused his "malicious prosecution" thereafter in violation of the U.S. Constitution and Alabama law.  Additionally, Count Two asserts that Cooley's damages were caused while the officers were "acting in the line and scope of [their] employment with the City, . . . and [were] due to the negligence of the City . . . in hiring, training or retraining" them.

Cooley claims in Counts Three and Four that Battles, the Anniston officers, and the City violated his: (1) "rights to life, liberty and the pursuit of happiness guaranteed by the First Amendment;" (2) "rights to a fair trial and trial by jury as required under the [F]ifth, [S]ixth, [E]ighth and [F]ourteenth Amentment[s];" (3) "rights to be free from excessive force and of cruel and unusual punishment as guaranteed by the [E]ighth Amendment;" and (4) "right to be free from double jeopardy ."

On October 3, 2003, this Court entered a Scheduling Order, which required that any amendments to the claims or parties be made on or before November 17, 2003, and that discovery be completed before February 9, 2004.  According to the City of Anniston, Cooley did not conduct any discovery and did not attempt to amend his complaint prior to the deadlines.

Battles and the City of Anniston filed Motions for Summary Judgment on or before January 7, 2004.  Regarding those Motions, this court entered an Order and Memorandum Opinion on March 10, 2004.  In that Order, this court dismissed all of Cooley's claims against the City of Anniston, with prejudice.  Pertaining to Cooley's claims against Battles, the Order stated:

> (1) To the extent that any excessive force claim purports to be based on any constitutional or statutory provision other than the Fourth Amendment, the Fourteenth Amendment, and § 1983, such claim is **dismissed, with prejudice**.
> (2) Any purported § 1981 claim is **dismissed, with prejudice**.
> (3) Any purported First Amendment claim is **dismissed, with prejudice**.
> (4) Any purported claim based upon "right to a fair trial and trial by jury under the Fifth, Sixth, Eighth, and/or Fourteenth Amendments," or otherwise, is **dismissed, with prejudice**.
> (5) Any purported double jeopardy claim is **dismissed, with prejudice**.
> (6) Any Eighth Amendment claim is **dismissed, with prejudice**.
> (7) Any federal and/or state malicious prosecution claim is **dismissed, without prejudice**, as being premature.
> (8) The application for injunction is **dismissed**.
>
> Any other claims against defendant Battles are stayed pending disposition of the criminal trial and deposition of plaintiff.

Cooley appealed this Order to the Eleventh Circuit on or about April 8, 2004.  The Eleventh Circuit dismissed the appeal on August 10, 2003.  Regarding this court's denial of injunctive relief, the Eleventh Circuit dismissed because of Cooley's failure to prosecute the appeal by paying the requisite court costs.  Pertaining to the Cooley's claims for damages, the Eleventh Circuit dismissed for lack of jurisdiction because there had not been a final judgment.

On August 27, 2004, Cooley brought a second action (CV-04-2588-E) in this court before Judge Bowdre, naming the following defendants: the City of Anniston, Anniston Chief of Police John Dryden, Chuck Battles, Scott Garrison, Shed Dobbin, Phillip Smith, Ken McKeleroy, and

the State of Alabama.  In this new action, Cooley also named as a defendants "A,B,C" (*sic*) and

"E,F,G."  According to the Complaint in this second case, "A,B,C" is meant to designate the

"individual, entity, corporation, [or] person, who or which deprived the Plaintiff of his civil

rights."  "E,F,G" is intended to designate the "individual, entity, corporation, [or] person who or

which conspired to deprive the plaintiff of his civil rights."  The Complaint in the second suit

alleges that defendants Dobbin, McKeleroy, and Garrison are police officers for the City of

Anniston.  The Complaint further asserts that defendant Smith, like Battles, is a member of the

Calhoun County unit of the Alabama Drug Task Force.  The facts alleged in the second

Complaint are much the same as those pertaining to the first suit, with the causes of action

arising from the August 29, 2002 traffic stop and subsequent events.  Count One of the second

Complaint charges:

> Defendant Chief John Dryden and Defendant City while acting under color of
> state law unlawfully deprived the Plaintiff, of Plaintiff's legal rights guaranteed to
> him by the Constitution and Laws of the United States in that [they] failed and or
> refused to train Defendant Officers and Defendant Agents.

Count Two states in part:

> Plaintiff avers that on or about August 29, 2004 (*sic*) Defendant Agents Smith and
> Battles under color of state law conspired and traveled in disguise on a public
> highway for the purpose of depriving the plaintiff of equal protection of the laws
> and equal privileges and immunities under the law of the United States and the
> State of Alabama.

> Plaintiff avers that as a proximate result of the action of the Defendant Agents the
> Plaintiff was deprived of his rights guaranteed by the Constitution of the United
> States and the State of Alabama and was injured, bruised, abraised and lacerated.

Count Three of the second Complaint alleges:

> Plaintiff avers that Officer Shed Dobbin acting in his capacity of Police Officer
> for the Defendant City of Anniston, Unlawfully deprived and or conspired to

4

deprive the Plaintiff of his legal rights guaranteed him by the Constitution of (*sic*) United States, State of Alabama and Federal Law by standing idly and failing to protect Plaintiff and watching the assault of the plaintiff by defendant Agents Smith and Battles.

Cooley alleges in Count Four of the new Complaint:

Plaintiff avers that Officers Scott Garrison and Ken McKeleroy acting in their capacity of Police Officers for the Defendant City of Anniston, unlawfully deprived and or conspired to deprive the plaintiff of his legal rights guaranteed him by the Constitution of (*sic*) United States, State of Alabama and federal law by assisting in his unlawful arrest and failing to protect plaintiff by watching the assault of the plaintiff by defendant Agents Smith and Battles and failing and/or refusing to do anything to stop said assault.

Finally, Count Five of the new Complaint asserts:

Plaintiff avers that City of Anniston, Chief John Dryden, Officer Shed Dobbin, Officer Scott Garrison, Kenny McKeleroy and Agents Battles and Smith conspired under the color of state law to deprive plaintiff of his rights to equal protection and due process of law and the equal privileges and immunities under the laws of the U.S., State of Alabama and City of Anniston by failing and/or refusing to appear for hearing of the Municipal Court of the City.  By filing the said action in state court and failing and/or refusing to appear and prosecute the said action in state court by refiling the action in the Municipal Court for the City of Anniston, after the statutes of limitation had run.

The two cases were consolidated by this court on November 22, 2004.

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) tests the legal sufficiency of a complaint.[1]  When considering a Rule

---

[1] The City of Anniston asserts that in addition to the Complaint, a court may take judicial notice of facts contained in the court file of another case when considering a Rule 12(b)(6) motion. *See United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) (stating that "[a] court may take judicial notice of its own records and the records of inferior courts").  *See also Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 (11th Cir. 2003) (taking judicial notice of a state court case).  *See generally*, F.R.E. 201(b) (stating "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); F.R.E. 201(d) (stating, "[a] court shall take judicial notice if requested by a party and supplied with the necessary

12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true.

*United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991).  All

factual allegations are to be construed in the light most favorable to the plaintiff.  *Brower v.*

*County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989).  Dismissal under

Rule 12(b)(6) is appropriate "'only if it is clear that no relief could be granted under any set of

facts that could be proved consistent with the allegations' of the complaint."  *Rendon v.*

*Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (citing *Hishon v. King &*

*Spalding*, 467 U.S. 69, 73 (1984)).

## ARGUMENTS

### I.      Defendant's Motion to Dismiss.

The City argues that, as a matter of law, the Anniston-defendants (the City of Anniston,

John Dryden, Scott Garrison, Shed Dobbin, Phillip Smith, and Ken McKeleroy) in CV-04-2588-

E are entitled to the affirmative defenses of res judicata, collateral estoppel, and prior pending

action.  Therefore, the City asserts, the claims against the Anniston-defendants in the CV-04-

2588-E case should be dismissed with prejudice.

#### A.      Res Judicata / Claim Preclusion.

"Res judicata or claim preclusion refers to the preclusive effect of a judgment in

foreclosing relitigation of matters that were litigated or could have been litigated in an earlier

suit."  *I.A. Durbin, Inc. v. Jefferson Nat. Bank,* 793 F.2d 1541, 1549 (11th Cir. 1986).  As such,

the City asserts, res judicata prohibits a plaintiff from bringing claims that were previously

---

information"); F.R.E. 201(f) (stating, "[j]udicial notice may be taken at any stage of the
proceeding").

litigated as well as some claims that have never been raised.  In order for the doctrine of res judicata to bar a subsequent suit, four elements must be present: (1) there must be a final judgment on the merits; (2) the decision must be rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases.  *Hart v. Yamaha-Parts Distributors, Inc.,* 787 F.2d 1468, 1470 (11th Cir. 1986); *Ray v. Tennessee Valley Authority,* 677 F.2d 818, 821 (11th Cir. 1982).  If these elements are met, the City argues, even unlitigated claims merge with the prior judgment in the case and are subsequently barred.  According to the City, all the elements are satisfied in this case, and Cooley's second action should, therefore, be dismissed with prejudice.

### 1.    There Was a "Final Judgment" in Case CV-03-2502-E as That Term Is Defined Under the Res Judicata Doctrine.

The City points out that this court entered Summary Judgment in its favor in Cooley's original suit.  Regarding Cooley's claims against the City, this court stated as follows:

> The claims against the City of Anniston will be dismissed.  Battles is not an officer or employee of the City of Anniston.  Furthermore, there is no substantial evidence that any action taken by any party was the result of any custom, practice, or policy of the City of Anniston, that the City of Anniston improperly hired or trained any employee or officer, or that the City of Anniston was on notice that any officer or employee needed further training.

The City maintains that this prior ruling covers all the claims asserted by Cooley in the second suit; i.e. that the Anniston officers "stood by" and "conspired with" Agent Battles and the State of Alabama to deprive him of his constitutional rights.  The City acknowledges that Cooley might argue that only a "final judgment" bars a subsequent lawsuit, and that this element is not met because this court did not certify the Summary Judgment Order as a final judgment pursuant

to Federal Rule of Civil Procedure 54(b).  However, the City argues, "final judgment" means

something different under the res judicata doctrine than it means for purposes of filing an appeal.

*See Alexander v. Chicago Park Dist.,* 773 F.2d 850, 855 (7th Cir. 1985) (finding that district

court was correct that order was sufficiently final for res judicata purposes even if not

appealable); *Yaba v. Roosevelt,* 961 F.Supp. 611, 622 n.3 (S.D.N.Y. 1997) (stating, "[f]inality for

the purposes of res judicata is not as strict as the requirements of finality for the purposes of

bringing an appeal").  According to the City, federal courts have uniformly held that: "[w]hether

a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final'

in the sense of precluding further litigation of the same issue, turns upon such factors as [(1)] the

nature of the decision (i.e., that it was not avowedly tentative), [(2)] the adequacy of the hearing,

and [(3)] the opportunity for review."  *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d

80, 89 (2nd Cir. 1961).  Defendant further asserts that federal courts have held that "finality" in

the context of res judicata analysis means only that, "the litigation of a particular issue has

reached such a stage that a court sees no really good reason for permitting it to be litigated

again."  *Id.*  For this reason, the City contends, federal courts have held that a court's grant of

partial summary judgment does constitute a final judgment for res judicata purposes.  *See*

*Hennessy v. Cement and Concrete Worker's Union Local 18A,* 963 F.Supp. 334, 338-39 & n.1

(S.D.N.Y. 1997) (finding that court's order granting motion for summary judgment, dismissing

complaint, and denying cross- motion for an order of discontinuance was a final adjudication on

the merits for res judicata purposes); *U.S. v. McGann,* 951 F.Supp. 372, 380-82 (E.D.N.Y. 1997)

(citing *Lummus Co.* and finding that a grant of partial summary judgment was sufficiently final to

have res judicata effect).  To further support its argument, the City points to *Sherman v.*

8

*Jacobson,* 247 F.Supp. 261 (D.C.N.Y. 1965).  In that case, the court stated:

> [Res judicata] is a principle which seeks to bring litigation to an end and promote certainty in legal relations.  The final judgment rule is designed to prevent enfeebling judicial administration which would result from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. Effectuation of these policies would clearly be hampered if "final" were given the same meaning in each context. A consistently broad interpretation of the term would flood the appellate courts with piecemeal litigation, while a narrow interpretation would allow a litigant to bring an endless number of law suits. It follows, therefore, that "final" for res judicata purposes must be construed in the light of the considerations of that doctrine, rather than be automatically equated with "final" in the final judgment rule.

*Sherman,* 247 F.Supp. At 268 (internal quotations and citations omitted).

Here, the City contends, there is no indication that this court considered its entry of Summary Judgement in favor of the City to be "tentative."  Additionally, the City asserts, Cooley had a full opportunity to conduct discovery, amend his pleadings to assert new claims and new defendants, produce evidence, and articulate arguments on the issues presented in his second filed Complaint.  The City maintains that Cooley actually did argue these very same issues to this court in the first case.  Furthermore, the City points out that Cooley will have an opportunity to appeal the decision in favor of the City once the claims against Battles are adjudicated in the original case.  Therefore, the City argues, the Summary Judgment entered by this court was a "final judgment" under the res judicata doctrine because the action has "reached such a state that [there is] no really good reason for permitting it to be litigated again."   *Lummus Co.,* 297 F.2d at 89.

## 2.    The Decision By This Court Was Rendered By a Court of Competent Jurisdiction.

The City points out that, in the original suit, this court had federal question jurisdiction

over the § 1983 claims, supplemental jurisdiction over the Alabama state law claims, and

personal jurisdiction over the defendants.  Therefore, the City maintains, the Summary Judgment

decision was rendered by a court of competent jurisdiction, as required by the res judicata

doctrine.

### 3.    The Parties, or Their Privies, Were Identical in Both Suits.

The City argues that the third requirement of res judicata is met because it and Cooley are

named parties in both cases.  The City acknowledges that Cooley may argue that this element has

not been satisfied because Dryden, Smith, Garrison, McKeleroy, and Dobbins were not parties in

the original case.  However, according to the City, such an argument should be rejected because

the "same parties or privies" element is designed to ensure that the party against whom the res

judicata defense is asserted has an adequate opportunity to prosecute all claims.  The City argues

that an analysis of whether the individual defendants not sued in the first action had "privies" in

that case is really not pertinent to the res judicata issue.  What is pertinent, the City asserts, is that

Cooley, the party against whom the res judicata defense is asserted, was a party in the previous

case.

According to the City, even if res judicata did require that Dryden, Smith, Garrison,

McKeleroy, and Dobbins have a privy in the original case, the record shows that the City would

satisfy this requirement.  The City argues that whether a party is in privity with another for

purposes of res judicata is a question of fact that is reviewed for clear error.  *See Mesa Petroleum

Co. v. Coniglio,* 787 F.2d 1484, 1489-90 (11th Cir. 1986) (citing *Astron Industrial Associates,

Inc. v. Chrysler Motors Corp.*, 405 F.2d 958 (5th Cir.1968) and stating, "[w]hen a case goes to

trial, the question of whether a party is virtually representative of the interest of a non-party is

10

one of fact for the district court); *Astron Indus. Associates, Inc. v. Chrysler Motors Corp.,* 405

F.2d 958, 961 (5th Cir. 1968) (stating, "[the] determination of identity between litigants for the

purpose of establishing privity is a factual question, and the District Court should not be reversed

unless its determination is clearly erroneous").    The Eleventh Circuit has stated, "'[p]rivity' is a

flexible legal term, comprising several different types of relationships and generally applying

when a person, although not a party, has his interests adequately represented by someone with the

same interests who is a party." *E.E.O.C. v. Pemco Aeroplex, Inc.,* 383 F.3d 1280, 1286 (11th Cir.

2004) (citing *Hansberry v. Lee*, 311 U.S. 32, 41-43 (1940)).   The City asserts that adequate

representation can arise in a number of circumstances such as:

> [(1)] where the nonparty has succeeded to the party's interest in property,
> [(2)]where the nonparty controlled the original suit, [(3)] where the nonparty's
> interests were represented adequately by the party in the original suit [i.e. "virtual
> representation"], and [(4)] where the party and nonparty have concurrent interests
> in the same property right.

*Hart v. Yamaha-Parts Distributors, Inc.,* 787 F.2d 1468, 1472 (11th Cir. 1986).   The City

contends that the "virtual representation" type of privity applies here.   The Eleventh Circuit has

held:

> "Virtual representation" is a term of art that we have defined as applying "when
> the respective interests are closely aligned and the party to the prior litigation
> adequately represented those interests."   The doctrine of virtual representation
> provides in essence that "a person may be bound by a judgment even though not a
> party if one of the parties to the suit is so closely aligned with his interests as to be
> his virtual representative."   Whether a party is a virtual representative of another
> is a question of fact.
>
> We have employed four factors in determining whether there is virtual
> representation: whether there was "participation in the first litigation, apparent
> consent to be bound, apparent tactical maneuvering, [and] close relationships
> between the parties and nonparties."   All of these factors need not be found to
> meet the virtual representation standard, nor is it necessarily enough that one of

them is found; rather, we examine them in concert to determine whether there is virtual representation.

*Pemco Aeroplex,* 383 F.3d at 1287 (internal citations and footnotes omitted).

The City argues that, in the original case, it was clearly aligned with Dryden, Smith, Garrison, McKeleroy, and Dobbins, and that it adequately represented their interests.  According to the City, it defended these individual defendants' actions and showed that they did not commit any constitutional or common law torts.  Additionally, the City maintains that this court analyzed whether these individual defendants committed any tortious actions even though they were not party defendants in the first action.  According to the City, if the individual defendants had been named party defendants in the original case, its attorney would have provided their defense, and the defense would not have included any arguments different than those already made in that case.  Therefore, the City argues, the virtual representation type of privity exists here and the third res judicata requirement is satisfied.

> **4.     The "Same Cause of Action" Was Involved in Both Cases as That Term Is Defined Under the Res Judicata Doctrine.**

The City asserts that cases are deemed to be part of the same "cause of action" when they "arise out of the same transaction or series of transactions" even if identical claims are not present in both cases:

> Under the current analysis we make a fact-based inquiry into whether the cases are based on the same factual predicate or came from the same nucleus of operative fact. If they did, they are the "same" for the purposes of res judicata. The doctrine is concerned with the substance, and not the form, of the proceedings.  "It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata."  Thus, we look to the factual issues that must be resolved by the litigation and ask whether those facts arise out of the same transaction or series thereof.  In so doing

we ask whether the plaintiff could, or rather should, have brought the second claim with the first lawsuit.

*Trustmark Ins. Co. v. ESLU, Inc.,* 299 F.3d 1265, 1270 (11th Cir. 2002) (internal citations omitted).  The City maintains that res judicata acts as a bar "to all legal theories and claims arising out of the same operative nucleus of fact."  *Pleming v. Universal-Rundle Corp.,* 142 F.3d 1354, 1356-57 (11th 1998) (quoting *Manning v. City of Auburn,* 953 F.2d 1355, 1358-59 (11th Cir. 1992)).  Here, the City argues, all the claims asserted by Cooley in the second case arose out of the same nucleus of operative fact as was present in the original action.  Therefore, the City asserts, all four requirements of res judicata are met here.

### B.     Collateral Estoppel / Issue Preclusion.

According to the City, issue preclusion or "collateral estoppel" also applies here to bar Cooley's claims in the second action.  Collateral estoppel forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit.  *I.A. Durbin, Inc. v. Jefferson Nat. Bank,* 793 F.2d 1541, 1549 (11th Cir. 1986).  The requirements that must be met prior to applying the collateral estoppel doctrine include: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior action; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.  *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985).

### 1.     The Issues in the Plaintiff's Second Case Are Identical to Those Involved in Case CV-03-2502-E.

According to the City, the issues critical to Cooley's claims in the second action are

13

whether the Anniston officers involved with Cooley's arrest (1) acted properly and (2) were properly trained.  Both issues, the City maintains, were examined by this court in the original action.  Therefore, the City asserts, the first requirement of collateral estoppel is satisfied.

**2.      The Issues at State in the Plaintiff's Second Case Were "Actually Litigated" in Case CV-03-2502-E as That Term Is Defined Under the Collateral Estoppel Doctrine.**

"When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated."  *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998) (quoting Restatement (Second) of Judgments § 27 cmt. d (1982)).  The City asserts that the issue of whether the Anniston officers acted properly and were properly trained was actually litigated in the original action.  Furthermore, the City argues, "[i]t is widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion."  *Christo v. Padgett,* 223 F.3d 1324, 1339 (11th Cir. 2000).  In the Eleventh Circuit, "for purposes of issue preclusion . . . , 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."  *Id.* at 1339 n.47.  According to the City, because the finality requirement is met for purposes of res judicata, it is certainly met with regards to collateral estoppel.

**3.      The Determination of the Issues at Stake in the Plaintiff's Second Case Were a Critical and Necessary Part of the Judgment in Case CV-03-2502-E.**

The City argues that this court had to determine whether the Anniston officers acted properly and whether they were properly trained in order for it to conclude that the City was not responsible under § 1983 and the Alabama common law.  Therefore, the City maintains that the third requirement of collateral estoppel has been satisfied here.

14

> **4.     Plaintiff Had a Full and Fair Opportunity to Litigate the Issues at Stake in the Second Case in Case CV-03-2502-E.**

The Eleventh Circuit has stated, "[c]ollateral estoppel bars relitigation of a previously decided issue when the parties are the same (or in privity) if the party against whom the issue was decided had a full and fair opportunity to litigate the issue in the earlier proceeding." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1552 (11th Cir. 1995) (citing *Allen v. McCurry*, 449 U.S. 90, 95 (1980)). The City argues that for the same reasons articulated in the res judicata discussion above, the same parties and/or their privies are involved in both cases. Furthermore, the City asserts, because the issues were decided on a Motion for Summary Judgment in the original case, Cooley had a "full and fair" opportunity to litigate his claims on the merits. To support this position, the City points to the following quote from *Creed Taylor, Inc. v. CBS, Inc.,* 718 F.Supp. 1171 (S.D.N.Y. 1989):

> Issues decided upon a motion for summary judgment may be accorded the same preclusive effect as issues decided following a trial. . . . It would be strange indeed if a summary judgment could not have collateral estoppel effect. This would reduce the utility of this modern device to zero.

*Creed Taylor*, 718 F.Supp. at 1177.

The City argues that, in the original action, Cooley knew there were other unnamed Anniston officers at the scene and was given their identities and their version of the relevant events. Despite this, the City contends, Cooley did not use discovery to investigate the unnamed officers potential liability or that of their supervisors. Further, the City maintains, Cooley could have asked this court for more time for discovery if it were needed and/or for leave to amend his Complaint to add new parties or theories of recovery. Instead, the City asserts, Cooley sidestepped this court and filed a repetitive suit. Given these options, Cooley, the City argues,

had a full and fair opportunity to litigate the second action's issues in the original suit.

According to the City, the current situation can be summarized as follows:

> [Plaintiff's] filing of a lawsuit in this court "amounts to no more than a wish that, in applying the objective criteria to the undisputed facts, a different judge would make [a different] . . . determination." The doctrine of collateral estoppel, however, does not allow a party to take two bites at the same apple. [Plaintiff] chose the initial forum, lost . . . and is now precluded from relitigating [those issues] here. For this reason, plaintiff's complaint is due to be dismissed.

*Chazen v. Deloitte & Touche, LLP,* 247 F.Supp.2d 1259, 1264 (N.D. Ala. 2003) (internal citation omitted), *aff'd in part, rev'd in part*, 2003 WL 22994232 (11th Cir.2003).

### C.  Prior Pending Action Doctrine.

The City asserts that, in addition to the doctrines of res judicata and collateral estoppel, the "prior pending action doctrine" also supports its contention that the Anniston-defendants are entitled to judgment as a matter of law.  According to the City, "[a]s part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2nd Cir. 2000) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  *See also Adam v. Jacobs,* 950 F.2d 89, 92 (2nd Cir. 1991) (stating that where there are two competing lawsuits, the first suit should usually have priority); *Walton v. Eaton Corp.,* 563 F.2d 66, 70 (3rd Cir. 1977 (en banc) (stating that it was clear that plaintiff had no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant).  The City maintains that the Eleventh Circuit has embraced the prior pending action doctrine.  *See I.A. Durbin, Inc. v. Jefferson Nat. Bank,* 793 F.2d 1541, 1551 (11th Cir. 1986) (stating, "[i]t is well established that as between federal district courts, ... the general principle is

16

to avoid duplicative litigation" (internal quotation marks omitted)).  The City asserts that the

doctrine "rest[s] on considerations of '[w]ise judicial administration, giving regard to

conservation of judicial resources and comprehensive disposition of litigation.'"  *I.A. Durbin,*

*Inc.,* 793 F.2d at 1551 (quoting *Colorado River,* 424 U.S. at 817).  The U.S. Supreme Court has

stated:

> a party seeking to enforce a claim legally or equitably must present to the court,
> either in pleading or in proof, or both, all the grounds upon which he expects a
> judgment in his favor. He is not at liberty to split up his demand, and prosecute it
> by piecemeal, or present only a portion of the grounds upon which special relief is
> sought, and leave the rest to be presented in a second suit, if the first fail. There
> would be no end to litigation if such a practice were permissible.

*U.S. v. Haytian Republic,* 154 U.S. 118, 125 (1894) (internal quotation marks omitted).[2]  The

City further notes that the First Circuit has stated that "[t]here is no reason why a court should be

bothered or a litigant harassed with duplicating lawsuits on the same docket; it is enough if one

complete adjudication of the controversy be had."  *Sutcliffe Storage & Warehouse Co. v. U.S.,*

162 F.2d 849, 851 (1st Cir. 1947).

    The Eleventh Circuit has stated that, "the general rule is that a suit is duplicative of

another suit if the parties, issues and available relief do not significantly differ between the two

actions."  *I.A. Durbin, Inc.*, 793 F.2d at 1551.  The City argues that the Eleventh Circuit has held

_____

    [2] In *Haytian Republic*, the Court also stated that the above quoted principle must be
qualified as follows:

> But this principle does not require distinct causes of action--that is to say, distinct
> matters, each of which would authorize by itself independent relief--to be
> presented in a single suit, though they existed at the same time, and might be
> considered together.

154 U.S. at 125.

that a second suit will be barred if the claim involves the same parties or their privies and "arises

out of the same transaction or series of transactions" as the first claim.  *Trustmark Ins. Co. v.*

*ESLU, Inc.,* 299 F.3d 1265, 1269-70 (11th Cir. 2002).  To further support its position, the City

highlights the following quote from *Oxbow Energy, Inc. v. Koch Industries, Inc.,* 686 F.Supp.

278 (D. Kan. 1988):

> A nonparty whose interests were adequately represented in a previous action will
> be bound by that prior action.  The same principle applies in the case of a party
> adequately represented in a prior action attempting to split the cause of action and
> file a second suit. A party is in privity if a person is so identified in interest with a
> party to former litigation that he represents precisely the same right in respect to
> the subject matter involved.

686 F.Supp. at 283 (internal citations and quotation marks omitted).  According to the City, the

court must "assess whether the second suit raises issues that should have been brought in the

first."  *Curtis v. Citibank, N.A.,* 226 F.3d 133, 140 (2nd Cir. 2000).  The City maintains that, in

determining whether a claim is barred by the prior pending action doctrine, the court may rely on

a comparison of the pleadings filed in the two actions.  *See Connecticut Fund For Environment*

*v. Contract Plating Co., Inc.*, 631 F.Supp. 1291, 1293 (D. Conn. 1986) (discussing preclusion

effect of prior suit against defendant and stating that, in most cases, a court may rely primarily on

a comparison of the pleadings filed in the two actions).

It is the City's position that the prior pending action doctrine applies because the claims

brought in the second suit should have been brought in the first suit.  The City argues that trial

courts are afforded broad discretion in fashioning remedies in order to avoid duplicating a

proceeding already pending in another federal court.  *I.A. Durbin, Inc.*, 793 F.2d at 1551-52.

Decisions based on such discretion, the City asserts, can only be reversed upon a finding of

abuse. *See Adam v. Jacobs,* 950 F.2d 89, 92 (2nd Cir. 1991) (discussing bounds of courts discretion). According to the City, "[t]he complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2nd Cir. 2000). The City maintains that the general rule is that the first suit to be filed should have priority "absent the showing of balance of convenience in favor of the second action." *Adam,* 950 F.2d at 93-94. The city argues that continuation of the first action is favored when it is possible, through amendment and joinder, to bring all of the issues and parties asserted in both suits into that single action. *See Hammett v. Warner Bros. Pictures*, 176 F.2d 145, 150 (2nd Cir. 1949) (stating that without such a possibility "there would be a clear balance of convenience in favor of the action in which all or most of the issues and parties could be joined").

The City points out that, "[b]ecause of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending, a court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2nd Cir. 2000). However, the City contends, a court may outright dismiss of the second suit with prejudice, because "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at 138-39. According to the City, the power to dismiss a duplicative lawsuit is meant to (1) foster judicial economy, (2) foster the "comprehensive disposition of litigation," and (3) protect parties from "the vexation of concurrent litigation over the same subject matter." *Kerotest Mfg. Co. v. C-O-Two Fire*

*Equipment Co.,* 342 U.S. 180, 183 (1952); *Adam*, 950 F.2d at 93.

The City asserts that, here, the court should not stay Cooley's second suit or dismiss it without prejudice. According to the City, to do either would permit Cooley to bypass this court's scheduling orders and management of the case. The City asserts that, "the district court must ensure that the plaintiff does not use the incorrect procedure of filing duplicative complaints to expand the procedural rights he would otherwise enjoy--particularly for the purpose of circumventing the rules pertaining to the amendment of complaints." *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985) (citing *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977)). Instead, the City maintains, this court should dismiss Cooley's second case with prejudice and make the dismissal a non-final judgment. The City argues that Cooley's attorneys knew or should have known that they could have joined the party defendants and claims brought in the second suit with this case. Further, the City argues, Cooley has not explained why a new complaint is necessary or why the Anniston-Defendants should be required to participate in two versions of the same suit.

## II.    Plaintiff's Response.

### A.    Res Judicata.

Cooley maintains that the four requirements of res judicata are not satisfied with regard to his claims against the City and the other defendants in the second case.[3] First, Cooley contends that there was not a final judgment on the merits in the original action. To support this argument, Cooley points to the Eleventh Circuit's August 10, 2004 Order dismissing in part his appeal of

---

[3] *See supra* **ARGUMENTS  I. A.** (listing the four prerequisites to the application of the res judicata doctrine).

this court's Summary Judgement Order of March 10, 2004.  In its Order, the Eleventh Circuit

stated:

> To the extent that appellant challenges the district court's March 10, 2004, order
> dismissing all claims against the City of Anniston and dismissing certain
> enumerated claims against police officer Chuck Battles while leaving other claims
> pending, the order is not final and appealable.

Secondly, Cooley argues that the parties or those in privity with them are not identical in

both suits.  Cooley asserts that parties to the second action, including Dryden, Dobbins,

McKeleroy, and Garrison, were not parties to the original action.

Finally, Cooley contends that the requirement under the res judicata doctrine that the

same cause of action be involved in both cases is not met here.  Cooley argues that the theories of

recovery under which he seeks to hold Dryden, Dobbins, McKeleroy, and Garrison liable were

not pled in his original action.  According to Cooley, the claims unique to the second suit include

his allegation that the City continued to prosecute him for crimes after the statute of limitations

had run, and his accusation that the City failed to train their officers to prevent civil rights

violations committed in their presence.

### B.     Collateral Estoppel / Issue Preclusion.

Cooley maintains that the requirements for the application of the collateral estoppel

doctrine are also not satisfied here.[4]  According to Cooley, the entry of Summary Judgment in the

original case was premature in that the discovery period was still pending at the time this court

entered that Order.  Additionally, Cooley argues that, in the original case, he was previously

operating under the constraints of being a criminal defendant.  According to Cooley, he requested

---

[4] *See supra* **ARGUMENTS  I. B.** (listing the four prerequisites to the application of the
collateral estoppel doctrine).

in his original Complaint that the criminal prosecution against him be enjoined, and he notified

defendants' counsel that he could not participate in discovery or sit for deposition without

forgoing his Fifth Amendment right against self incrimination and his due process rights to a fair

trial in the criminal matter.   Given these arguments, Cooley asserts that the issues were not

actually litigated in the original case.   Further, Cooley contends that he was not given a full and

fair opportunity to litigate the issues in the original suit.   Cooley also  maintains that the parties

and issues in the second action are different from the first.   Finally, Cooley disputes the City's

contention that the prior action pending doctrine has been adopted in the Eleventh Circuit, stating

that it was not adopted in *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541 (11th Cir.

1986).

## CONCLUSIONS OF THE COURT

The court has fully recited the arguments of the parties with reference to collateral

estoppel, res judicata, etc.   The court, however, does not reach those issues.   The court does

conclude, however, that plaintiff's filing of a second cause was simply a back door effort to avoid

a principle stated in *Mays v. United States Postal Service,* 122 F.3d 43 (11th Cir. 1997).   See

page 46, particularly notes 5 and 6.   Plaintiff had a full opportunity to address his claims against

the City of Anniston in the first filed action without any response pursuant to Federal Rule of

Civil Procedure 56(f).   Further there was no motion under Federal Rule of Civil Procedure 59(e).

This court cannot allow this method of circumvention.   The claim(s) against the City of Anniston

will be dismissed with prejudice.   The claims asserted against defendants John Dryden, Scott

Garrison, Shed Dobbin, Phillip Smith, and Ken McKeleroy in the second case are not dismissed,

but may be addressed through a Motion for Summary Judgment.

22

This 29th day  of December, 2004.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**